Arthur Lyons et al., Complainants, v. 333 North
    Michigan Avenue Building Corporation et al.,
    Defendants and Appellees. Arthur Lyons, Appel-
    lant.

Gen. No. 37,054.

Opinion filed October 16, 1934.

SHULMAN, SHULMAN & ABRAMS, for appellant; MEYER ABRAMS, of counsel.

PAM & HURD and POPPENHUSEN, JOHNSTON, THOMPSON & COLE, for certain appellee; ANDREW J. DALLSTREAM and JAMES W. HYDE, of counsel.

TAYLOR, MILLER, BUSCH & BOYDEN, for certain other appellees; JOHN S. MILLER, LAURENS G. HASTINGS and ROBERT A. OAKES, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Complainants' original bill was filed on February 11, 1933. After demurrers had been filed by the 333 North Michigan Avenue Building Corporation (hereinafter called the 333 Corporation) and by other defendants, the cause came on for hearing on the demurrers, and the court sustained them, gave leave to complainants to file an amended bill, and ordered that "the decision of the motion of the Central Republic Trust Co. (hereinafter called the Trust Co.) to dismiss the bill for lack of jurisdiction in the court to entertain the same" (by reason of the pendency of a bill to foreclose, Case No. 551,529, filed by the Trust Co., as Trustee, against said 333 Corporation and others) "be reserved until the filing of said amended bill."

Complainants' amended bill was filed on April 5, 1933. It is signed by a firm of solicitors in the names of Arthur Lyons, Benjamin Galperin, Becky Doppelt,

Minnie Roderick, Sam Baer, Joseph Savelson, Bertha Steinhard and *Charles* Nider, and it is verified by said Nider, who designates himself as one of the complainants. It states in the first paragraph that "Arthur Lyons, in his own behalf and on behalf of the other bondholders who join herein as complainants, and for the benefit of all other bondholders who are equally situated and desire to join herein as complainants, respectfully shows:" Then follow many allegations, as contained in 30 paragraphs, from which the following salient facts appear: That in June, 1927, the 333 Corporation, organized under the laws of Illinois, issued a large number of first mortgage bonds (in excess of 8,400) of the total par value of $6,250,000, for the purpose of erecting a building on the real estate now known as 333 North Michigan Avenue, Chicago; that to secure the bonds, it, on June 6, 1927, executed its trust deed to the Bank of America, as trustee, conveying the premises; that by various consolidations and changes of name the trusteeship under the trust deed passed to and now is in said Central Republic Trust Co.; that on January 25, 1932, a certain "Deposit Agreement" was executed between the Greenebaum Sons Investment Co. (hereinafter called the Investment Co.) as Reorganization Manager, and such of the bondholders as might thereunder deposit the bonds they severally owned, in which agreement the Trust Co. was named as the depositary; that Arthur Lyons *deposited his $1,000 bond* under the agreement; that just prior to February 1, 1932, the Trust Co., as trustee under the trust deed, took possession of the premises and building and began, and is now, collecting the rents and profits thereof; and that on February 1, 1932, the Trust Co. accelerated the maturity of the bonds and filed a bill (case No. 551,527) in said superior court to foreclose the trust deed securing the bonds, on which no foreclosure decree has as yet been entered.

The amended bill makes charges against defendants of fraud and misrepresentation, largely by conclusions rather than by allegations of facts, in the stated value of the premises securing the bonds, in the published advertisements concerning the value of the bonds when they were offered for sale, in the actions and doings of some of the defendants in promoting the plan of reorganization, and in procuring bondholders to deposit their several bonds with the Trust Co., as depositary, under the Deposit Agreement. A certain "Income Statement with Comparison" (erroneously called a "Balance Sheet" by complainants' counsel) and the "Deposit Agreement" are set out in full in the bill, and three other documents are attached thereto as Exhibits "A," "B" and "D." The allegations of the last two paragraphs of the bill are in substance as follows:

(29) That Benjamin Galperin, who joins as a co-complainant, is the owner of one bond for $1,000, which he has deposited with the Depositary under the Deposit Agreement; that Lyons and Galperin "were not aware of the fraudulent purpose for which the deposit was sought, but, having now discovered its real object, they repudiate the actions of the Committee, the depositary and the agreement, and do not desire to be parties to a fraudulent enterprise to cheat and defraud the other bondholders"; that they, therefore, bring this action in their names, and for the use and benefit of all other bond owners "who are equally desirous of preventing this *fraudulent scheme to freeze out their co-beneficiaries,* devised by the Trustee, the Reorganization Manager and the Mortgagor," to the end that said two bonds deposited by said Lyons and Galperin, as well as the bonds deposited by the other bond owners, "be returned to them free and clear from the lien of the depositary, trustee and reorganization manager."

(30) That Becky Doppelt (owner of two bonds of $500 each), Minnie Roderick (owner of one bond of $500), Sam Baer (owner of two bonds of par value of $1,500), Joseph Savelson (owner of $5,000 of the bonds), Bertha Steinhard (owner of one bond of $500), and *Morris* Nider (owner of two bonds of $1,000 each) also herein join as co-complainants; that the total amount of all of the bonds owned by Lyons and his co-complainants aggregates $12,500; that Doppelt, Roderick, Baer and Savelson "have heretofore *attempted* to intervene in said foreclosure proceeding, claiming adverse interests to that of the Trustee, but because of the objection by the Trustee now join herein as co-complainants"; that one Lottie Brenner (who did not join as a co-complainant) "is the owner of bonds aggregating $100,000 and is also objecting to the 'scheme,' and there are many other bond owners who object thereto"; that it would be too expensive to make all bondholders parties to the proceeding, many of whom are widely scattered and out of this court's jurisdiction; that their interest is not in conflict with that of complainants; and that "all are interested in one common cause, namely, the protection of their rights."

The prayer of the amended bill is substantially as follows:

That the 333 Corporation, the Trust Co. (individually and as trustee, and as depositary), the Investment Co., and said nine other named parties (individually and as officers and directors of said 333 Corporation) answer the bill, but not under oath; that they also answer 17 special interrogatories as set forth; that "the court may find and determine that there is now due the whole bond issue and interest thereon"; that "a money decree be entered against the Mortgagor (333 Corporation) and the persons who may be found to be personally liable thereon, less any

funds which may be turned over in reduction of the indebtedness of the items enumerated below upon a proper accounting''; and that the court may find and decree:

1. That any funds collected from the income of the premises for the payment of taxes and interest, which were ''diverted'' for other purposes, be followed into the possession of the several defendants ''be charged and impressed with a lien in favor of all bondholders,'' and that the persons ''who participated in the diversion of the funds'' be ordered and decreed to refund same.

2. That the Trust Co., as trustee in the trust deed securing the bonds, and the Investment Co. were ''negligent and faithless,'' and ''failed to protect the beneficiaries of the trust and their fiduciaries in allowing the mortgagor (333 Corporation) to *file objections* to the payment of taxes without setting up a sufficient *reserve fund* in accordance with the provisions of the trust''; that they are liable for the 1928 and 1929 taxes in the sum of $100,009.68, plus interest and penalties due thereon; that they are also liable for the 1930 taxes, for the moneys paid thereon by the trustee (Trust Co.) from the income received in 1932, and for the unpaid balance of the 1930 taxes amounting to $65,420.77; that they also are liable for the payment of the balance of the loan account which they paid over under the agreement, ''which provided that such funds be paid in reduction of the last maturities and which last maturities were *fraudulently sold* and the funds paid over as aforesaid,—the exact amount of which is unknown but which should be ascertained upon a proper accounting.''

3. That the individual defendants, ''who received the funds under the aforesaid agreement and who participated in the fraudulent scheme,'' be required to refund such moneys and ''be held jointly and sever-

ally liable thereon, together with the Trust Co. and the Investment Co.''

4. That the ''scheme'' to foreclose the premises was ''conceived for the purpose of foreclosing the interest of the *bond owners* and not the interest of the mortgagor (333 Corporation), and, in order to *coerce* the bond owners to part with their bonds and entrust them to the re-organization Manager under a plan which would be beneficial to said Mortgagor, the Trustee, the Investment Co., and said individuals, but detrimental to the bond owners''; that said scheme to foreclose ''was fraudulent''; and that the bonds be returned to the ''true owners'' and ''such proceedings be stayed.''

That the court may also find that this bill was properly filed for and on behalf of all of the bondholders, who are equally interested in the relief sought; that complainants are entitled to the expense incurred in this behalf and ''to the payment for the expense of their counsel and solicitors''; that during the pendency of the cause ''a receiver be appointed'' and all of the corporate assets and property be turned over to such receiver; that the court may also find ''that the Deposit Agreement was procured by fraud and coercion and that the bondholders were deceived thereby''; that the parties endeavoring to carry out the terms thereof be ''permanently enjoined from carrying out their proposed reorganization plan''; and that complainants may have such further general relief as to equity may seem meet.

That the 333 Corporation, the Trust Co., the Investment Co., and their respective officers, agents and attorneys be restrained ''from using *any* of the funds received from the income of the premises or *any* of the assets belonging to the mortgagor (333 Corporation), and from diverting *any* of said funds or assets for any purpose *except* the payment of taxes and assessments,

and interest if any on the bond issue; from *further proceeding with the foreclosure* heretofore commenced by them; from soliciting the bond holders to deposit their bonds with them; and from using any of the bonds in their possession or control for the purpose of pledging them as security for the fees of the Trustee, the Depositary, the Reorganization Manager, their counsel and agents, until the further order of this Court.''

To the amended bill the Investment Co. filed a general and special demurrer, in which the stated causes of demurrer are in substance: (1) No equity shown; (2) adequate remedy at law; (3) bill is multifarious; (4) lack of jurisdiction because of the pending foreclosure suit; (5) insufficient statements of facts as distinguished from conclusions; and (6) all proper relief sought may be had in the foreclosure suit. The Trust Co. filed a written motion to dismiss the bill for the reasons: (1) That on February 1, 1932, the Trust Co., as trustee in the trust deed, filed its bill in the superior court (case No. 551,529) against the 333 Corporation, asking for the enforcement of the trusts created; that on February 29, 1932, the 333 Corporation entered its appearance as a defendant therein; that thereupon the exclusive jurisdiction of the trust, the trustee and the beneficiaries and the subject matter of the trust vested in the superior court in said cause No. 551,529, to the exclusion of all other courts; that the only remedy any beneficiary had under the trust was by proving in said foreclosure suit that the trustee was violating its trust, and by intervening therein for that purpose; (2) that so far as the Trust Co. is involved, all relief to which complainants in the present suit are entitled ''is involved in and must be obtained in said foreclosure suit.'' And the Trust Co. further stated that on the hearing of the motion, and in support thereof, it would ''use the records and files in the

present suit and the records and files in cause No. 551,529.'' The motion was set for hearing at a future day, and it was further ordered that all demurrers theretofore filed to complainants' original bill stand as such to the amended bill. On June 29, 1933, the general and special demurrer of John A. Holabird (one of the individual defendants) was filed to the bill, in which, as causes for demurrer, he states in substance:

That the bill shows upon its face that there is now pending in the superior court said foreclosure suit, and that any and all relief prayed for herein against this defendant can be obtained in said foreclosure suit.

That the bill shows that four of the complainants (i. e., Doppelt, Roderick, Baer and Savelson) ''have already submitted themselves to the jurisdiction of the court in said foreclosure proceeding, in that they have heretofore attempted to intervene therein.''

That the bill is multifarious, in that it therein appears that it is exhibited against this defendant and others ''for several different matters and causes,'' in many of which it appears that this defendant ''is not in any manner interested or concerned''; that by reason of such distinct matters, the bill is drawn out to considerable length, and, by joining issues involved in the foreclosure suit with matters involving this and the other individual defendants, the proceedings in the progress of this suit will be ''intricate and prolix,'' and this defendant ''will be put to unnecessary charges and expenses in matters which in no way relate to or concern him.''

That, as appears from the face of the bill, complainants have an adequate remedy at law.

That the bill is ''ambiguous, confused and inconsistent,'' particularly as follows:

(1) In section 4 it is alleged that ''the persons interested in the project, who had an interest in the land, caused to convey to the corporation'' (333 Cor-

poration) the land, without stating who those persons were or in any way connecting them with any of the parties to the suit.

(2) In section 4 it is also alleged that "said land was appraised by the incorporators (of said 333 Corporation) at the value of $1,600,000, and the capital stock in that amount was subscribed for and paid for by the land thus appraised." But the original charter of the corporation, which is incorporated in the bill as an exhibit, "shows upon its face that only a *part* of the land was appraised at said sum of $1,600,000."

(3) In section 7 certain persons are referred to as "individuals of recognized business and financial standing," without stating who they are.

(4) In the bill these persons are alleged to have "caused to organize" the 333 Corporation. But the original charter discloses that the incorporators of the corporation, as well as the subscribers to its stock, "were persons not mentioned by name in the bill or made parties thereto."

(5) In the bill it is alleged that there was a complete "waiver of liability" of the officers and directors of the 333 Corporation; whereas "it appears from the trust deed (made a part of the bill by reference) that the provision with respect thereto was to the effect that *no recourse* under any obligation, covenant or agreement of said indenture, or of any bond or coupon secured thereby, should be had against any present or future stockholder, officer or director of the corporation, either directly or through the company, by the enforcement of any assessment, or by any legal or equitable proceeding by virtue of any statute or otherwise, *except* for stock subscriptions, and *except* in so far as they or any of them should have guaranteed the payment of the same by a signed undertaking separate from any participation in any corporate action by the company or from any action as such stockholders, officers or directors."

(6) In the bill it is alleged that the trust deed "was never given to the bondholders"; whereas it appears from the trust deed, and from the form of bond set forth therein, that each bondholder is referred to the deed "for a statement of the terms and conditions upon which the bonds were issued and secured and the rights of the holders of the bonds," and that the bonds "all contained a provision similar to that referred to as being in the trust deed with respect to recourse against stockholders, officers or directors of the corporation."

(7) Although this defendant and other individuals are made parties defendant to the bill, individually and as officers and directors of the 333 Corporation, it does not appear that any of them are either such officers or directors.

(8) In the bill it is alleged that the trust deed "did not contain any provision for monthly payments, as was represented to the bond owners and complainant by numerous circulars and pamphlets which were issued by the Investment Co. when the bonds were purchased by them, which was unknown to complainants until about this date"; whereas the bill does not identify said circulars and pamphlets or allege they had any connection whatsoever with the issue of the bonds by the 333 Corporation.

(9) In the bill it is alleged that "it was represented to the bond owners that the cost of construction was greatly in excess of the amount of the loan"; whereas it is not alleged by whom such representations were made, or that this defendant and any of the other defendants were in any way connected with such representations.

(10) In the bill it is alleged that "as a result of the placing of the bond issue, the Trust Co., Investment Co., and the officers and directors of the 333 Corporation have greatly profited by using the funds derived

from the sale of the bonds for their own purposes";
whereas it does not appear from the bill that any of
the defendants are such officers and directors.

(11) In section 21 of the bill the figure of $470,-
501.09, is given as the total net figure from certain
tabulations set forth; whereas it appears from the
face of the bill and from said tabulations that said
figure is erroneous and should be $1,608.39, instead of
$470,501.09.

Thereafter other general and special demurrers to
the bill were filed by other defendants. The Trust Co.
brought up for hearing its motion that the bill be dis-
missed for want of jurisdiction in the court to enter-
tain it because of the pendency of said foreclosure
suit, and on June 29, 1933, the motion was heard, re-
sulting in the court denying the same. Thereupon,
on the same day, the Trust Co. filed its general and
special demurrer to the amended bill, setting forth in
substance as causes of demurrer that (a) the bill is
multifarious; (b) complainants have an adequate
remedy at law; (c) bill cannot be maintained because
of the pendency of the foreclosure suit, and (d) bill
is demurrable because of lack of sufficient allegations
of fact, as distinguished from conclusions, to warrant
the relief prayed. And thereupon, on June 29, 1933,
after a full hearing upon the several demurrers, the
court entered the decree in question, in part as follows:

1. That said amended bill is *multifarious* in that it
sets up separate causes of action against some of the
defendants and other causes of action against other
defendants, with which respective causes of action
all of the defendants are not connected;

2. That complainants have a complete and adequate
remedy at law for any and all fraud claimed to have
been perpetrated against them by defendants or any
of them;

3. That the matters and things set up and alleged in
said amended bill, so far as the parties to said fore-

closure suit mentioned in said bill are concerned, are *properly cognizable in said foreclosure suit* and *should not be heard by this court;*

4. That said amended bill consists *almost entirely of argument and conclusion* and *does not set up facts* sufficient to entitle complainants to any relief whatever.

"It is, Therefore, Ordered, Adjudged and Decreed that said demurrers, general and special, and each and every of them, be and they are hereby sustained, and said amended bill of complaint is dismissed for want of equity."

The present record does not disclose that after the demurrers were sustained complainants asked leave to amend the bill or to file another one, but from the decree they prayed and were allowed a "joint and several" appeal. Lyons, alone, perfected the present appeal.

After carefully reviewing the amended bill and the writings embodied therein or attached as exhibits thereto, and considering the exhaustive briefs and arguments of opposing counsel, we have reached the conclusion that the court was fully warranted in sustaining said demurrers and in entering the decree in question.

We are of the opinion that the demurrers were properly sustained on the ground that the bill is multifarious. Multifariousness in bills, and the principles or rules to be applied in ascertaining that defect, are discussed at length in *First Nat. Bank v. Starkey,* 268 Ill. 22, 26, 27. In 1 Puterbaugh's Chancery, 7th Ed., sec. 40, pp. 78, 79, it is said: "Multifariousness may be defined as the improper joining of distinct and independent matters in one bill, or the improper joinder of parties not connected with the controversy in its proper and legitimate scope. . . . One of the important reasons for the rule against multifariousness

is to avoid the inconvenience to the defendant of being compelled to present unnecessary defenses or to complicate his defense by combining matters which have no necessary connection with each other. There is no settled rule, and therefore, as to what constitutes multifariousness, every case must be governed by its own circumstances leaving the court to the exercise of its sound discretion." Under these principles and rules we think that it sufficiently appears on the face of the bill that it is multifarious because (a) it seeks to litigate several claims which are separate and distinct, and (b) it joins distinct subject matters against several defendants, some of whom have no interest in one or more of the matters thus joined.

And we are of the opinion that the matters and things alleged in the bill were cognizable in the foreclosure suit pending in the superior court, which had original prior jurisdiction to determine said matters and things, and that for this reason, as stated in the decree, the court properly sustained the demurrers and dismissed the bill. (See *Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co.,* 177 U. S. 51, 61; *Ward v. Foulkrod,* 264 Fed. 627, 630; *Nolan v. Barnes,* 268 Ill. 515, 520.) In the case last cited it is said: "It is elementary that the court first lawfully obtaining jurisdiction will retain it until the end of the controversy and to the exclusion of all others; also, that no other court, even of concurrent jurisdiction, can or will make findings or orders which have any bearing upon the issues in the court originally entertaining the cause."

Counsel for complainants state in their printed brief that "fraud" is the gravamen of the bill, but after carefully reading the bill we are of the opinion that, as stated by the court in the decree, it "consists almost entirely of argument and conclusions and does not set up *facts* sufficient to entitle complainants to any

relief'' upon the ground of fraud. It appears to us (1) that the allegations in the bill as to the claimed improper practices and advertisements of the former Greenebaum Sons' Bank & Trust Co. are not sufficiently shown to have any connection with the transactions resulting in the purchase by complainants of their particular bonds; (2) that the allegations of fraud, based upon the so-called ''Balance Sheet,'' are contradicted by facts and figures appearing on the face of the instrument itself; (3) that the allegations of the bill, taken in connection with certain attached exhibits, do not sufficiently show any fraudulent valuation of the *entire* land, which was conveyed by the 333 Corporation to the Trust Co., trustee, as security for the bond issue in question; and (4) that the allegations of the bill do not sufficiently show that the plan of reorganization was fraudulent as claimed, or that some of the complainants were induced by fraud and misrepresentation to deposit their bonds with the Trust Co., as depositary. It is well settled law in this State that where there is discrepancy or contradiction between allegations in a bill in chancery and facts as shown in an exhibit attached to and made a part of the bill, the exhibit will control; and that a demurrer to the bill does not admit such allegations as are in conflict with facts disclosed by such exhibit. (*Price v. Solberg*, 269 Ill. 459, 462; *Armstrong v. Douglas Park Bldg. Ass'n*, 176 Ill. 298, 300; *Waller v. Village of River Forest*, 259 Ill. 223, 230.)

From the allegations of the bill, as contained in paragraphs 29 and 30 above set forth and in other paragraphs, it appears that of the complainants, who joined in the suit with Arthur Lyons (the owner of one $1,000 bond) none is an owner of bonds in a large amount (i. e., Galperin, $1,000; Doppelt, $1,000; Roderick, $500; Baer, $1,500; Savelson, $5,000; Steinhard, $500, and Nider, $2,000; or a total, including Lyons,

of $12,500); that the total principal amount of all bonds, issued by the 333 Corporation and secured by its trust deed sought to be foreclosed in said prior foreclosure action, is $6,250,000; that Lyons and Galperin have deposited their bonds with the Trust Co., as depositary, under the deposit agreement and plan of reorganization; and that complainants Doppelt, Roderick, Baer and Savelson have "attempted to intervene" in said foreclosure proceeding, "claiming adverse interests." It is not alleged in the bill whether or not complainants, other than Lyons and Galperin, have deposited their bonds with the depositary under said agreement and plan; nor is it alleged that either Lyons or Galperin, before the commencement of the present action, made any demand upon the depositary for the return of their bonds. In paragraph 4 of the prayer of the bill it is asked that the court may find and decree "that the 'scheme' to foreclose the premises was conceived for the purpose of foreclosing the interest of the *bond owners* and not the interest of the *mortgagor*, and in order to *coerce* the bond owners to part with their bonds and entrust them with the Reorganization Manager, under a plan which would be . . . detrimental to the bond owners," that the bonds be returned to the true owners, and that "such proceedings be stayed." It is contended by counsel for the 333 Corporation and the individual defendants, as well as by counsel for the Trust Co., in substance, that the *facts* alleged in the bill do not warrant the granting of any such relief, and that the bill sufficiently discloses that the real purpose of its filing was the possible blocking of the plan of reorganization mentioned and further prosecution of the prior foreclosure suit, and thereby creating a maneuvering value in the comparatively very small number of bonds held by complainants. After considering the bill in its

entirety we are of the opinion that there is substantial merit in the contention.

The decree of the superior court of June 29, 1933, sustaining the demurrers of the several defendants to complainants' amended bill and dismissing said bill for want of equity, is affirmed.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.