J. R. Fetherston et al., Appellants, v. National Republic
Bancorporation et al., Appellees.

Gen. No. 37,951.

152

Heard in the first division of this court for the first district at the December term, 1934. ▮▮▮▮ Opinion filed April 15, 1935.

SHULMAN, SHULMAN & ABRAMS and LEONARD F. MC-GEE, all of Chicago, for appellants; MEYER ABRAMS, of counsel.

KIRKLAND, FLEMING, GREEN & MARTIN, FOLLANSBEE, SHOREY & SCHUPP, RUBENS, FISCHER, MOSSER & BAR-

NUM, ARTHUR J. HUGHES and FRANK MICHELS, all of Chicago, for appellees.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiffs appeal from an order sustaining demurrers to their amended bill of complaint and sustaining defendants' motion to dismiss the amended complaint.

The amended complaint sought, among other things, to have impressed with a trust certain collateral held by the Central Republic Trust Company. Plaintiffs obtained an order enjoining the Central Republic Trust Company from selling the collateral, but on appeal from this order we reversed it. In our opinion (*Fetherston v. National Republic Bancorporation*, 272 Ill. App. 500) we considered plaintiffs' claims to the collateral. We recited the allegations of the amended bill to the effect that the defendant Central Republic Trust Company notified the Madison Square State Bank and H. R. Dow, its receiver, that it held two promissory notes,—one for $150,000 and one for $50,000, of which there was a balance due of more than $146,000, and that the Central Republic Trust Company would offer at public sale the collateral held by it as security for the payment of the notes; and that the Central Republic Trust Company was not an innocent purchaser for value of the notes but had received them through its merger with the National Bank of the Republic. The prayer of the bill was that plaintiffs be decreed to have a lien on this collateral.

In that opinion we sustained the contention of the Central Republic Trust Company that it held this collateral as security for the payment of the two notes above described, and that no facts were alleged by plaintiffs tending to show that the Madison Square State Bank did not owe the claimed balance due on

the two notes. We held that the Central Republic Trust Company ought not to be enjoined from selling the collateral to pay the balance due it and we reversed the injunctional order.

The present amended complaint presents no additional facts to substantiate any claim against these securities. Our former holding settled the law with respect to the attempt of plaintiffs to have the collateral impressed with a trust in favor of the depositors, and we reaffirm our previous holding in this respect. *Stevenson v. Stevenson*, 297 Ill. 338.

The amended complaint also seeks to have the defendants and certain officers and directors held jointly and severally liable for alleged fraudulent acts which it is asserted induced depositors to continue making deposits in the Madison Square State Bank, and it is asked that such defendants be decreed to pay such amount as may be found due plaintiffs, including plaintiffs' costs and expenses and reasonable fees of their attorneys.

The amended complaint alleges that the National Bank of the Republic was a banking institution located in downtown Chicago, which desired to dominate and control certain banks in outlying districts of Chicago, and with that end in view organized a syndicate known as National Republic Investment Trust, and a corporation known as the National Republic Bancorporation which obtained control of a number of outlying banks, including the Madison Square State Bank; that in order to induce the depositors to leave their money in the Madison Square State Bank and others to make new deposits in the bank, the National Bank of the Republic and the National Republic Bancorporation caused to be advertised that the outlying banks were a part of a system supported by them with combined resources of more than $250,000,000, and that certain officers of the Bancorporation and officers of the "Re-

public Bank'' advertised that the outlying banks were in a strong financial condition, backed by the downtown banks mentioned; that a statement of the financial condition of the Madison Square State Bank was issued with the knowledge and approval of the National Bank of the Republic and the Bancorporation, showing that the Madison Square State Bank had resources of more than two and one-half million dollars, cash on hand, and due from banks of more than $726,000; that these statements were untrue and were known by the parties who made them to be untrue, and were made to induce the general public to deposit their money with the banks controlled by the National Republic Bancorporation, of which the Madison Square State Bank was one; that large display cards containing such advertisements were posted in each of the outlying banks so that the depositors were led to believe that these outlying banks were affiliated with and supported by the downtown banks.

That on or about June, 1931, many of the outlying banks in Chicago were in financial difficulty and closed by the auditor of public accounts, and in order to induce plaintiff J. R. Fetherston, and other depositors, to keep their deposits in the chain of banks owned and controlled by ''Republic Bank'' and National Republic Bancorporation and to continue to make deposits therein, the ''Republic Bank'' through its president, John W. O'Leary, caused a letter to be written to the presidents of the several outlying banks wherein statements were made which misled depositors as to the condition of the Madison Square State Bank. It was also alleged that the plaintiffs were misled by false statements issued by the Madison Square State Bank with the knowledge, approval and participation of the ''Republic Bank'' and National Republic Bancorporation, upon which depositors relied, and continued to keep their accounts in the Madison Square State Bank.

Plaintiffs allege that the representations contained in the O'Leary letter and the printed statements were untrue and known to defendants to be untrue when made; that on June 14, 1932, the Madison Square State Bank was closed by the auditor of public accounts and that in order to escape the consequences of its acts in holding out to the public that the "Republic Bank" supported the Madison Square State Bank, the "Republic Bank" merged with the Central Republic Trust Company of Illinois and changed its name to Central Republic Trust Company, and permitted the outlying banks to be closed.

Plaintiffs charge that it was fraud upon them and the other depositors to advertise to them that the outlying banks were affiliated with an institution whose combined resources were in excess of $250,000,000; that such false advertisements and publications were the result of a conspiracy of the officers and directors—all controlled by the Bancorporation; that by such fraudulent conspiracy the public was induced to deposit their money in the outlying chain of banks whereby millions of dollars were lost to depositors, and that the corporations, officers and directors participating in the conspiracy should be held accountable for their fraudulent acts and made to respond in damages for the loss occasioned to the depositors.

The amended complaint also alleges that on June 30, 1931, the Madison Square State Bank, with knowledge, approval and participation of the "Republic Bank" and the Republic Bancorporation, published a false statement of its condition in that the statement showed that bills payable of the Madison Square State Bank, aggregating more than $348,000, were paid, when as a matter of fact they were not paid, because a few days after the publication of the statement the records of the Madison Square State Bank showed the $348,000 due and owing by that bank; that the statement showed

cash on hand and due from the other banks, amounting to $726,450.08, when the fact was that this included an item of $650,000 which was fictitious, and in fact the bank had only cash to the amount of $76,450.08. It was alleged that complainants, relying upon these statements, continued to make deposits in the Madison Square State Bank.

We have only outlined the amended complaint. To note in detail the multitude of matters which are set forth would greatly extend this opinion.

Exhibits were attached to the complaint which showed the advertising and literature and the O'Leary letter, referred to in the complaint. Examination of these exhibits fails to support the allegations of fraud, misrepresentation, deceit and conspiracy. Where there is a discrepancy or contradiction between the allegations in a bill and the facts as shown in an exhibit attached to and made a part of the bill the exhibit will control, and a demurrer to the bill does not admit such allegations as are in conflict with facts disclosed by the exhibits. *Lyons v. 333 North Michigan Ave. Bldg. Corp.*, 277 Ill. App. 93, and cases there cited.

The allegation that the "Republic Bank" and the National Republic Bancorporation advertised that each of the outlying banks "were part of the system supported and operated by them" is contradicted by the exhibit. The exhibit shows no such statement or suggestion. The exhibit also contains no statement to support the allegation that it was advertised that "the outlying banks . . . had the backing of an institution having combined resources of over $250,000,000." The advertisement stated that the banks "affiliated with National Republic Bancorporation have combined resources in excess of $250,000,000." The advertisement gave a statement of the resources and liabilities of all the affiliated banks, showing that their combined resources exceeded $250,000,000. There is no allegation

of the untruth of the statement made in September, 1930, that these banks were strong and liquid.

Plaintiffs vigorously attack the letter of Mr. John W. O'Leary, president of the National Bank of the Republic, written to the presidents of the outlying banks, including the president of the Madison Square State Bank. The letter was written on June 11, 1931, when, as is generally known, many outlying banks in Chicago were in financial difficulties. The letter is dated more than a year before the closing of the Madison Square State Bank. He said the condition of the outlying banks has undergone very great improvement; that "The loop banks are sending millions of dollars to these banks, and are prepared to lend them further support consistent with sound banking practice." The complaint does not allege that this was untrue. The letter proceeds: "Fortunately, the public seems to realize that many of these banks are able to take care of their own needs, and are in sound condition. Naturally we are supporting such strong banks as . . . the Madison Square State Bank.

"Many of the outlying banks have been keeping themselves in extremely liquid condition, and the very fact that these banks have already met the severe tests brought about by present conditions should indicate their soundness."

We find nothing in this letter to support the allegations of fraud and deceit. It is merely a letter of encouragement and did not purport to forecast what might happen when the financial storm reached its climax.

In general, the allegations with reference to advertisements relate to a period too remote to June 14, 1932, the date of the closing of the bank. The advertisements seem to have been put out in September, 1930, about a year and nine months before the closing of the Madison Square State Bank.

As to the allegations that the bank statement of June 30, 1931, was false in showing that there were no bills payable, and that the item of cash on hand and due from other banks was false by reason that it included two fictitious items aggregating $650,000, the facts alleged do not contradict the items appearing in the bank statement. The fact that the bank had bills payable both before and after the date of its published statement would not negative the statement that it had no bills payable on the date of the statement. Also, the facts pleaded show that the deposits in the ''Republic Bank'' aggregating $650,000, which was credited to the account of the Madison Square State Bank, were in fact real deposits. But whatever may have been the facts concerning these items (and the charges are so indefinitely made that it is almost impossible to arrive at any concrete facts charged) the bank statement was published approximately a year before the bank was closed and was therefore too remote. Moreover, considering the changing conditions at this time it is apparent that no depositor was justified in continuing as a depositor with the bank until June 14, 1932, in reliance on a statement made a year before. It is worthy of note that the record shows that the Madison Square State Bank, between the date of the statement of which complaint is made and its closing in June, 1932, had met deposit withdrawals to the amount of $1,440,000, or nearly 60 per cent of its deposit liabilities on June 30, 1931.

The court will take judicial notice of the economic depression. *Straus v. Chicago Title & Trust Co.,* 273 Ill. App. 63; *People ex rel. Krajci v. Kelly,* 279 Ill. App. 22. The bankers themselves were the victims of circumstances as well as the depositors, and what was done was evidently with the hope that if the bank credit could be maintained by continuing its ordinary business, affairs might take a favorable turn. *McDonald*

*v. Chemical Nat. Bank,* 174 U. S. 610. There are no facts alleged in the complaint which show that anything was done except for the best interests of the depositors. There are no allegations of facts showing any fraudulent intent.

Plaintiffs say that this is a class suit, brought by Fetherston and all other depositors similarly situated, and say that this court in our former opinion held that such a suit may be brought. We there said that 3,000 depositors ought not to be required to bring the same number of suits when equity, in one suit, would afford complete relief. Manifestly we were referring to the question there presented, namely, the propriety of the injunction restraining the National Bank of the Republic from selling the collateral. If plaintiff Fetherston were successful in his claim that the collateral should be impressed with a trust for the benefit of the depositors, all the depositors would profit. There would be no need to try this issue more than once.

However, the complaint also seeks to hold the defendants liable in damages on the ground that plaintiff Fetherston and other depositors were deceived into making and continuing deposits. It is in the nature of an action for deceit. The rule in equity pleading allowing representative suits where the parties are numerous has no application to this part of the complaint. Representative, or class suits, are allowed only where the question is of a common or general interest, where one sues for the benefit of the whole. In all such cases the parties stand in the same situation, having one common right or one common interest. Story's Equity Pleadings (9th ed.), secs. 94, 97, 120, 126. We find no cases deciding that mere numerousness of parties alone will confer jurisdiction upon a court of equity in a case that is properly cognizable at law.

In *Michelsen v. Penney,* 10 Fed. Supp. 537, plaintiff filed a bill in his own behalf and in behalf of other depositors, alleging losses through misrepresentations of the defendant, a director of the City National Bank; the court dismissed the bill, saying: ''The cause of action in such a situation is personal and individual to every depositor who has been misled by the defendant's statements, and the remedy is an action at law. . . .'' And to the argument that the depositors were numerous and that there were common questions of fact and of law involved, said: ''But these considerations do not justify the casting of many actions at law for deceit into one suit in equity, nor do they permit some of the allegedly defrauded depositors to bring a class or representative suit in behalf of all. The authorities leave no room for doubt on this point.'' (Citing cases.) To the same effect is *Bickford's, Inc. v. Federal Reserve Bank of New York,* 5 Fed. Supp. 875, where the court said: ''A fair test of the right to maintain a class suit is whether a decree would be binding on absent persons said to be members of the class. In a true class suit the decree is binding on such persons.'' Among other cases so holding are *Hale v. Hale,* 146 Ill. 227, at page 257; *Supreme Tribe of Ben-Hur v. Cauble,* 255 U. S. 356; *Hale v. Allinson,* 188 U. S. 56; *Spear v. H. V. Greene Co.,* 246 Mass. 259; *Chester v. Halliard,* 36 N. J. Eq. 313.

It is obvious that if plaintiff Fetherston should fail in his claim for damages for deceit this result could not be *res adjudicata* in an action at law by other depositors of the Madison Square State Bank. Assuming the alleged misrepresentations, Fetherston might fail in his proof as to when he become a depositor, whether he saw the bank statements and advertisements or the O'Leary letter described in the complaint, or that he

relied on them. Certainly his failure could not bind another depositor who could establish all the elements necessary to maintain successfully an action of deceit.

Cases cited by plaintiffs which support a class suit are not applicable to an action claiming damages through reliance on deceit and false representations. A typical case is *Wilkinson v. Heberling*, 231 Ill. App. 516, which was a bill by certain stockholders seeking to rescind and have canceled stock purchases made by them and to recover from the defendant corporation and its officers the amount paid by the complainants for such stock. It was held that the bill was entertainable in equity as a common point of litigation was presented involving the whole subject matter, the decision of which would settle the rights of all parties to the suit. Another case not in point is *Chicago Telephone Co. v. Illinois Mfrs Ass'n*, 106 Ill. App. 54, where the right of the coplaintiffs was based on an ordinance whose construction would affect all the parties.

Moreover, plaintiff Fetherston has not joined other depositors of the Madison Square State Bank as coplaintiffs. The only place where other depositors purport to be named is in an exhibit "A" attached to the amended complaint. This exhibit is entitled, "List of Depositors, Members of Committee Who Are Joined as Plaintiffs to the Cause.

"Depositors of the Madison Square State Bank Who Are Members of the Depositors' Protective Organization and Have Authorized the Officers of Said Organization to Act for Them in Legal Proceedings Affecting Their Interest." Then follows a list of names of alleged depositors. Many of the names are indefinite and uncertain. The so-called "Depositors' Protective Organization" was not in existence at the time of the alleged injuries to the individual depositors. It could not be a coplaintiff in this action to recover damages for deceit. Neither can the persons whose

names appear on the list in the exhibit be properly called coplaintiffs with Fetherston. Persons are not made parties to a suit by having their names appear only in an exhibit attached to the bill.

We hold that plaintiff Fetherston cannot file his complaint in equity in a representative capacity to recover damages alleged to have been incurred through false representations made severally to individual depositors.

Other points are made, which we have considered but do not think of sufficient importance to require comment. To discuss them adequately would make this opinion far too long.

We hold that the chancellor properly sustained the demurrers to the amended bill of complaint and properly ordered the suit dismissed, which order is affirmed.

*Order affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.