GEORGE COSTELLO, Plaintiff-Appellee, Cross-Appellant, *v.* LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant, Cross-Appellee.

First District (1st Division)   No. 62188

Opinion filed May 10, 1976.

Kalvin M. Grove and Meredith K. Wellington, both of Lederer, Fox and Grove, of Chicago, for appellant.

Roger J. Boylan, of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

George Costello (plaintiff) brought action against his former employer, Liberty Mutual Insurance Company (defendant) alleging that defendant had fraudulently induced him to retire prematurely, thereby causing him to forfeit group insurance coverage provided by defendant to all employees. The amended complaint prayed for an accounting and damages. After a bench trial, the trial court awarded plaintiff damages of $3000 and certain additional benefits. Defendant appeals and plaintiff cross-appeals.

Plaintiff testified that he had worked for defendant as an elevator inspector since July 5, 1953. The inspections involved a great deal of physical exertion including standing, stooping and riding on top of

elevator cars. In January 1969, when plaintiff was about 56 years old, he was hospitalized for a month with a severe heart attack and did not return to work until May 14, 1969. On October 29, 1970, he had another heart attack and was unable to work until May of 1971. Commencing May 5, 1971, he worked four hours a day for two weeks and then resumed full-time status.

When he returned to work, he was informed that the company was discontinuing its elevator inspections. He was to be trained to handle small business risk inspections when there were not enough elevator inspections to fill his time. During some of his working hours he studied materials in preparation for his new work. He testified that he had difficulty in this because he was tired and his eyes bothered him. During this time, plaintiff was short of breath and had chest pains. He remained at home from June 21, 1971, to June 30, 1971. At that time he took five days of sick leave and three vacation days.

When plaintiff returned to work on July 1, 1971, he reported to the company physician for a physical examination. He then reported to his supervisor who informed him that his job was terminated due to the cutback in elevator inspection. His supervisor told him that the company doctor said he was healthy enough to resume work and that his health had nothing to do with the termination. Furthermore, he was informed that his work had been satisfactory. Plaintiff's supervisor offered him the choice of receiving one month's salary and withdrawing the money he had paid into defendant's pension fund, or of applying for early retirement benefits.

After consulting with his attorney, his doctor and his wife, plaintiff requested early retirement and signed a waiver of any right to benefits under defendant's income protection plan for disabled employees. His application for early retirement was accepted and he began to receive net weekly payments of $67.02 per month after deductions for medical and life insurance premiums. As we will later specify, he also received continued health and reduced life insurance benefits. At this time, plaintiff applied for and received unemployment compensation benefits from the State of Illinois and Social Security disability payments.

The written waiver, dated July 29, 1971, is in the nature of an agreement or stipulation signed by both parties. It provides that plaintiff's request for early retirement will be acted on expeditiously but that any claim he might have for income protection benefits was incompatible with the concept of retirement. Therefore, if plaintiff agreed to waive all right to further income protection benefits "as a condition precedent to early retirement," he was to sign the letter, which he did.

Dr. Clement J. Michet testified that he had been plaintiff's physician since 1951. He stated that plaintiff was quite obese, had a severe heart

condition and was a borderline diabetic. He detailed plaintiff's various symptoms and medical treatment. In his opinion, plaintiff's condition indicated that plaintiff could not stand the stress of performing elevator inspections and therefore he could not work full time in that occupation. Furthermore, plaintiff's physical weakness was of a permanent nature. On cross-examination the doctor testified that plaintiff could perform work at home while sitting at a desk or perhaps on the telephone. The heart condition was so severe that the physician feared that plaintiff could not withstand the rigors of commuting to and from work each day.

Robert H. Wingate, a senior vice president of defendant, testified that the company has greatly reduced its elevator inspection work and no longer employs any elevator inspectors in Chicago. Plaintiff was terminated due to lack of work. Mr. Wingate also testified that defendant's employees do not automatically receive early retirement benefits upon termination but that a committee determines whether an employee shall receive such benefits. He had recommended that plaintiff receive early retirement benefits and the committee had acted accordingly.

On cross-examination he testified that prior to plaintiff's termination, several of defendant's executives had exchanged memoranda expressing concern about plaintiff's health and his ability to continue on the job. On May 12, 1971, Mr. Wingate received a memorandum from another vice president of the company stating that it did not appear that plaintiff would "work out" in the new job for which he was being trained and that his work would have to be limited to elevator inspections.

Mr. William E. Powell testified that he was plaintiff's supervisor at defendant company. The company had reduced the number of elevator inspections it handled and plaintiff was terminated due to lack of work. Efforts to retrain plaintiff were unsuccessful. He had suggested that plaintiff be examined by the company doctor because it was contrary to defendant's policy to terminate an employee who was too ill to secure employment elsewhere. When he was informed that plaintiff was physically capable of continuing to perform his work, Mr. Powell notified plaintiff of his termination and suggested that he apply for early retirement benefits. Mr. Powell subsequently received a letter from plaintiff requesting early retirement and reserving his rights under defendant's income protection plan for disabled employees. In response, the witness wrote informing plaintiff that he would have to waive any claim to income protection in order to receive early retirement.

The group policy provided by defendant for its employees extended coverage to regular full-time employees including plaintiff. The policy creates an income protection plan covering employees disabled by accident or sickness. The benefit provided is two thirds of the regular

weekly earnings of the employee to a maximum of $275 per week. However, payment of these benefits is limited to a one-year period. The benefits will continue beyond one year only in the case of an employee so disabled by sickness or accident that he is "wholly and continuously prevented from engaging in any occupation for wage or profit." In such case, the employee would receive the full income protection benefit until he attained age 65, at which time he would begin to receive lifetime retirement benefits.

The policy also contained life insurance benefits. In plaintiff's case, as long as he received income protection benefits he would have retained a life insurance policy in the amount of $36,000. However, if plaintiff retired, the life coverage was reduced by 25% after one month and 10% of the original benefit per year for five more years. Thus, since plaintiff was on retirement, his life benefit would have been reduced to $9000 after five years. If he retained income protection benefits until age 65, the total life insurance would remain in effect until then, at which time these reductions would take effect.

As regards payment of income protection benefits, it is agreed that plaintiff has received these amounts for 43 weeks. Thus, the maximum that he could receive if he were not wholly and continuously disabled would have been nine additional weeks. If he were wholly and continuously disabled, he would then have been eligible for a longer period of benefits under the policy, as above pointed out. In either event, plaintiff would be, and presently is, entitled to participate in the medical coverage plan. Deductions would be made from plaintiff's permanent retirement benefit for premiums for medical coverage and life insurance.

In the order appealed from, the trial court found expressly that defendant had not engaged in any fraud in connection with the termination of plaintiff's employment. The court awarded plaintiff nine additional weeks of benefits under defendant's income protection plan, reduced by the amount of retirement benefits plaintiff had already received, plus damages of $3000.

In this court, defendant urges that, in view of the trial court's finding that defendant committed no fraud and because the record contains no basis for liability, the judgment for plaintiff should be reversed. Defendant contends alternatively that even if a basis for liability had existed, the award of $3000 was against the manifest weight of the evidence and the amount of disability payments awarded must be further reduced by the amount of plaintiff's Social Security benefits.

Plaintiff urges that defendant fraudulently secured plaintiff's consent to waive his right to income protection and that this court should set aside that waiver. Plaintiff also urges that he was unable to engage in any occupation at the time of his termination and therefore should receive

disability benefits under the income protection plan until he reaches the age of 65.

■■ We reach only the dispositive issue of whether defendant's conduct toward plaintiff constitutes fraud. In his amended complaint, plaintiff alleged that:

"15. * * * with the intent to defraud him of the benefits due him under the terms of its own insurance program, described as the income protection coverage, [the defendant] falsely informed him that he was physically capable of resuming his duties full time when at the same time it fraudulently arranged to inform the plaintiff that his job had been eliminated; that they falsely informed him that his only course to pursue was to take early retirement by which he would be assured of retaining the benefits of company's medical and hospital cost program."

The well reasoned and frequently cited decision in *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89, authoritatively states the essential legal elements in establishing a cause of action for fraudulent misrepresentation:

"(1) It must be a statement of material fact, as opposed to opinion;

(2) it must be untrue;

(3) the party making the statement must know or believe it to be untrue;

(4) the person to whom the statement is made must believe and rely on it, and have a right to do so;

(5) it must have been made for the purpose of inducing the other party to act; and

(6) the reliance by the person to whom the statement is made must lead to his injury."

Plaintiff cannot assert that he acted to his detriment in reliance upon a fraudulent misrepresentation without establishing his right to rely thereon. He may not close his eyes to obvious facts, enter into a transaction and then charge that he was deceived by the words of the other party. *Broberg*, 66 Ill. App. 2d 134, 141.

Plaintiff testified that he had been under the care of his personal physician at the time of his discharge by defendant. Nonetheless, he claims that he relied on a false statement by defendant regarding the condition of his health. Similarly, plaintiff sought the advice of his attorney prior to accepting early retirement and waiving any rights in defendant's income protection plan, yet he has alleged that he relied upon defendant's representation that early retirement was the only course of action available to him.

Aside from the remaining requirements of proof of fraud, plaintiff cannot establish that he had a right to rely upon defendant's statements

concerning these two material matters. It is only where the parties do not have equal knowledge or means of knowledge of the facts represented, or there are other peculiar circumstances inducing the one to whom the representations are made to rely solely thereon, that a person may justifiably rely upon the representations of another. *Broberg*, 66 Ill. App. 2d 134, 141.

■■ Plaintiff's final allegation of fraud states that he was fraudulently informed that his job was being eliminated. At trial, defendant's employees and officers all testified that defendant's activity in the area of elevator inspections had been drastically reduced and that plaintiff had been terminated due to lack of work. There was testimony that, although defendant had once employed six elevator inspectors in the Middle West, the company now employs only two or three inspectors in that area, none of whom are located in Chicago. In addition, plaintiff himself testified to defendant's futile efforts to retrain him for a different type of work. Plaintiff offered no evidence to prove the falsity of these assertions. *Broberg*, 66 Ill. App. 2d 134, 139.

In our opinion, as appears from the above analysis, even proceeding upon the assumption that plaintiff's complaint is sufficient to state a cause of action predicated upon fraud, plaintiff has failed to prove that he executed the written waiver as a result of fraudulent misrepresentation by defendant. It has been repeatedly held that "fraud is never presumed but must be the subject of clear and convincing proof." (*Gill Custom House, Inc. v. Gaslight Club, Inc.* (1975), 28 Ill. App. 3d 1066, 1073, 330 N.E.2d 559, *leave to appeal denied*, 60 Ill. 2d 596.) In our opinion, the finding of the trial court that defendant did not engage in any fraud whatsoever is amply supported by the evidence. The evidence preponderates strongly in support of the conclusion that plaintiff intentionally relinquished his known rights in accordance with the classic definition of waiver. *Allstate Insurance Co. v. National Tea Co.* (1975), 25 Ill. App. 3d 449, 461, 323 N.E.2d 521, *leave to appeal denied*, 58 Ill. 2d 596.

Having reached this result, it follows that the written waiver executed by plaintiff binds both of the parties and is determinative of their rights. Therefore, plaintiff is not entitled to receive nine weeks of additional benefits under the income protection feature of the policy. It follows similarly that the grant of damages to plaintiff in the amount of $3000 is erroneous. Consequently, on consideration of all of the issues raised in defendant's appeal and plaintiff's cross-appeal, the order appealed from entered May 9, 1975, is reversed and the cause remanded with directions for the entry of an order dismissing plaintiff's complaint with prejudice.

Order reversed; cause remanded with directions.

BURKE and O'CONNOR, JJ., concur.