PETERSON INDUSTRIES, INC., Plaintiff-Appellee, Cross-Appellant,

v.

LAKE VIEW TRUST AND SAVINGS BANK, Defendant-Appellant, Cross-Appellee.

Nos. 78–1181, 78–1244.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1978.

Decided Aug. 30, 1978.*

---

* This appeal was originally decided by unreported order on July 27, 1978. *See* Circuit Rule 35. The court has subsequently decided to issue the decision as an opinion.

Marian C. Haney, Chicago, Ill., for defendant-appellant.

James E. Betke, Chicago, Ill., for plaintiff-appellee.

Before TONE and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.**

PER CURIAM.

The diversity action giving rise to this appeal and cross-appeal was tried by the court without a jury, upon Peterson Industries, Inc.'s (Peterson) complaint sounding in fraud and deceit for damages. Peterson is an Arkansas company engaged in the business of supplying dressed poultry to wholesalers of that product. Lake View Trust and Savings Bank (the bank) lent money to a poultry wholesaler, Zip Poultry (Zip) with whom Peterson did business. Zip, after a series of financial setbacks, is now bankrupt.

The court below entered judgment for Peterson in the sum of $34,668.04 plus interest. The court, adopting Peterson's proposed findings of fact and conclusions of law, found that Zip had been a customer of the bank for at least 10 years prior to 1974, and that on November 5, 1974, the bank loaned Zip $150,000, obtaining security for that loan as well as for a prior unsecured $100,000 loan to Zip. The court further found that the bank, at Zip's request, wrote unsolicited letters to various poultry suppliers, including Peterson, which letters read in pertinent part as follows:

> The subject company has banked with us for many years in both a depository capacity, and as a borrower . . . we have entered into a revolving credit arrangement with the subject providing for an additional $150,000 in working capital on a secured basis. We believe that this will enable them to continue their business and assist them in an orderly reduction of their trade payables.
>
> We have every confidence in the management of the subject concern, and we are sure that they will continue as a viable member of your industry.

The court found Peterson relied on that letter when it agreed to change its C.O.D. payment arrangement with Zip to a credit basis. The court also found that the bank refused to honor checks Zip issued in January, 1975, in payment for three loads of poultry Peterson shipped, and that Zip did not issue a check for a fourth shipment once the bank informed Zip it would no longer honor Zip's checks. Finally, the court found that Zip's financial status deteriorated after it received the bank's loan, and that the bank did not inform Peterson of this turn of events. The court concluded, in awarding judgment to Peterson on the checks for the first three loads, that the bank breached a duty to inform Peterson of its new knowledge and of its changed expectations, as a result of which breach of duty Peterson incurred damage.

The bank appeals that decision, and Peterson cross-appeals the denial of judgment on the check for the fourth load. We reverse the district court's decision on the checks for the first three loads. The grounds on which we base that reversal make it unnecessary for us to consider Peterson's cross-appeal.

** The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, is sitting by designation.

■ Peterson had the burden of proving by a preponderance of the evidence, *Barrett v. Shanks*, 382 Ill. 434, 47 N.E.2d 481 (1943), *Harry Alter Co. v. Chrysler Corp.*, 285 F.2d 903 (7th Cir. 1961), the following things about the bank's letter: (1) it was a statement of material fact, as opposed to opinion; (2) it was untrue; (3) the bank knew or believed it to be untrue; (4) Peterson believed and relied on it, and was justified in doing so; (5) the statement was made for the purpose of inducing Peterson to act; and (6) Peterson's reliance on the letter led to its injury. *Costello v. Liberty Mutual Insurance Co.*, 38 Ill.App.3d 503, 348 N.E.2d 254 (1976).

■ On review of the district court's decision in this case we are bound to the findings of fact that court made, unless those findings are clearly erroneous. Fed. R.Civ.P. 52(a). However, determinations of certain elements in a case alleging fraud, especially the question of whether reliance was justified, are not strictly questions of fact. Instead, these determinations involve an ultimate judgment concerning the character of fundamental facts and results from the application of a legal rule to those facts. Thus, our scope of review as to those facts is broad. *See Yorke v. Thomas Iseri Produce Co.*, 418 F.2d 811, 814 (7th Cir. 1969). None of the facts found by the lower court conflict with the decision we reach today. Instead, we find the lower court applied an incorrect standard of law to those facts in reaching its conclusions.

The bank argues that the letter contains no false statements of material fact, as opposed to opinion, on which Peterson could reasonably rely, and that even if some statements in the letter are inaccurate, Pe-

terson knew of the inaccuracy at the time it changed its credit terms and shipped its product to Zip. Peterson counter-argues that the statement that the loan would be used for "working capital" was false, since Zip used about $65,000 of the loan to complete payment for the purchase of the stock retained by a former owner of Zip.[1] That use, Peterson says, does not constitute "working capital." At no point, however, does Peterson argue that Peterson itself did not know of inaccuracies in the bank's statements. To the contrary, Peterson's credit officer candidly stated he knew at the time Zip received the loan that the loan money would be used to satisfy the former owner's judgment.[2] At that point, not even the bank knew for certain that Zip used the loan money, in violation of the loan agreement, to purchase the stock. Moreover, by December 13, 1974, two weeks before the change in credit terms, and a month before the final loads were shipped, Zip informed the credit officer that any payment to Peterson would come from new receivables because Zip's bank account, including the new loan, was depleted.[3] Thus, Peterson knew well in advance of its decisions that the "working capital" no longer existed.

■ It is long settled that under Illinois law "[w]here it appears that a person charging misrepresentation has actually investigated and received information from his own sources [rebutting the misrepresentation], as here, he is not in a position to claim he was deceived." *Hayes v. Disque*, 401 Ill. 479, 488, 82 N.E.2d 350, 355 (1948). A person charging fraud "may not close his eyes to obvious facts, enter into a transaction and then charge he was deceived by the words of the other party." *Costello*,

---

1. The former owner had obtained a judgment for that amount against Zip's later owners, and in execution thereof effectively tied up all Zip's receivables. This precipitated, in part, the crisis that caused Zip to request the bank loan.

2. "Q You knew on November 5, 1974, from conversations with Mr. Bickman [Secretary of Zip] that moneys [sic], from that lending to Zip Poultry on that date, certain moneys [sic] were being paid to John Donaubauer [Zip's former owner] from that lending?

"A Yes." (Tr. 310–11).

3. "Q Were you aware on December 13, if not before, December 13, 1974, that Zip Poultry would depend upon business it generated for new receivables to collect, to pay off the indebtedness to your company.

"A Yes.

"Q There was no fund or cash in the bank that you were aware of that they could reach into and pay you from?

"A Not to my knowledge." (Tr. 309).

*supra,* 348 N.E.2d at 257. The uncontradicted evidence shows that if the $150,000 loan was used for some purpose other than as "working capital,"[4] Peterson through its own resources knew that fact. Peterson cannot claim the letter's inaccuracy in that regard confers responsibility on the bank for Peterson's loss. The company had ample first-hand information from which it perceived the true use Zip made of the loan.

Since the accuracy of the rest of the letter cannot be in dispute,[5] Peterson would have had to rely on the statements therein expressing the bank's confidence in Zip's continued viability. And, in fact, Peterson's own credit officer testified that when Zip finally paid off pre-existing debts it owed Peterson, he relied on that part of the letter expressing the bank's views on Zip's future.[6]

■ The fact that Peterson's credit officer relied on the *opinions* of the bank, and not on the bank's assertions of material fact, brings into play another settled principle of Illinois law, namely that a "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation." *Metropolitan Bank and Trust Co. v. Oliver,* 4 Ill.App.3d 975, 987, 283 N.E.2d 62, 64 (1972). The exceptions that Illinois recognizes to this rule have no application here. One such exception arises when the statement is a "false promise or representation of future conduct." *Id.* citing *Carroll v. First National Bank of Lincolnwood,* 413 F.2d 353 (7th Cir. 1969), *cert.*

*denied,* 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970). Here, the bank made no promises, nor did it make any representations whatever about Zip's or its own conduct; the bank merely stated its opinion as to Zip's overall condition and prospects. Another possible exception to the general rule, *see Parker v. Arthur Murray, Inc.,* 10 Ill.App.3d 1000, 295 N.E.2d 487 (1973), and *Costello, supra,* focuses on the circumstances surrounding the representation in order to determine the reasonableness of the plaintiff's reliance on the opinion, e. g., ease of access to outside information regarding facts or opinions represented. *Costello, supra,* and the relative sophistication of the parties, *Parker, supra,* and *Citizens Savings and Loan Association v. Fischer,* 67 Ill. App.2d 315, 214 N.E.2d 612 (1966), are factors the Illinois courts have considered. Here, Peterson had a great deal of first-hand information, independent of the bank's letter, on which it could evaluate for itself Zip's viability. Moreover, all the parties concerned were experienced business people. Utilizing its business expertise, and on the basis of all its information, Peterson made a choice to continue to deal with Zip. The choice, as it developed, was a bad one. But there is nothing in the events of this case indicating that special circumstances exist to justify Peterson's reliance on the bank's letter to the exclusion of its own information sources.

■ Nevertheless, Peterson asserts that, as the trial court held, the bank had a duty to amend its assessment of Zip's business future once it became aware Zip was not

---

4. There is some disagreement between the parties as to the exact meaning of the term "working capital" in the context of the loan and Zip's financial situation. In view of the grounds on which we base the decision, we need not resolve the disagreement at this time.

5. There is no question that Zip had dealt with the bank for ten years, nor is there doubt that Zip entered into a revolving credit arrangement with the bank providing for $150,000 on a secured basis. These are the only material facts disclosed in the letter, other than the statement about the use to which the loan was to be put.

6. The credit officer testified as follows when asked to explain the way he reached his decision to continue doing business on a credit basis with Zip:

> Mainly based on the Lake View letter. At that point in time, Zip was cleared up with us. They owed us no money and we had no obligation to them, but *the bank was behind them and sent out the letter stating that they had every confidence in them continuing to be a viable member of our industry.* So I felt like we should go along and supply them *and try to keep them in business.* (Tr. 131–32) (emphasis added).

doing as well as expected. Peterson's assertion has no basis in law. In *Fetherston v. National Republic Bancorp.*, 280 Ill.App. 151 (1935), depositors of defunct banks on the outskirts of Chicago sued a bank (Bancorp) affiliated with those outlying institutions. One basis of the suit was a charge of fraud stemming from a letter Bancorp sent to the outlying banks' depositors to reassure them their savings were safe. The outlying banks had collapsed within a year from the time Bancorp mailed its letter. The court found no duty existed on the part of Bancorp to inform the depositors of its revised opinion about the other banks' continuing viability, even if Bancorp knew the outlying banks' situation deteriorated.

Peterson fails to direct us to any Illinois cases holding to the contrary, nor can we discover any through our own research. The letter in the instant case resembles in pertinent part the letter in *Fetherston*,[7] and we find that case controlling.[8]

In summary, then, we conclude that Peterson was not justified in relying on any opinion or allegedly inaccurate statement of fact in the bank's letter. We also conclude that the bank had no duty to advise Peterson of any information the bank might have acquired regarding Zip's deteriorating financial condition. We therefore reverse the district court's judgment and remand for the entry of judgment in accordance with this opinion.

---

7. The letter in *Fetherston* contained the following statements:

> "The loop banks are sending millions of dollars to these banks . . . .
> "Naturally we are supporting such strong banks as the Madison Square State Bank.
> "Many of the outlying banks have been keeping themselves in extremely liquid condition, and the very fact that these banks have already met the severe tests brought about by present conditions should indicate their soundness." 280 Ill.App. at 159.

The court characterized the bank's message as "merely a letter of encouragement."

8. We recognize that the length of time between the bank's statement and Zip's collapse is shorter than the time period involved in *Fetherston*. This does not weaken the application of the principle in that case, namely, that there is no special duty on the part of a bank to inform anyone of changes in its opinions about another business' viability.