Maureen DOUGHERTY, Plaintiff,

v.

Albert ZIMBLER, Defendant.

No. 95 C 406.

United States District Court,
N.D. Illinois,
Eastern Division.

April 4, 1996.

Alan Jay Mandel, Chicago, IL, for Maureen Dougherty.

Dennis Andrew Marks, Thomas F. Falkenberg, Querrey & Harrow, Ltd., Chicago, IL, for Albert Zimbler, CPA.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Maureen Dougherty brings this diversity action against Albert Zimbler for fraud and negligent misrepresentation by an accountant. Dougherty claims that Zimbler, an accountant, made false statements of fact to her and omitted material facts in his representations to her in order to convince her to purchase a business from Zimbler's client, Tad Bero. Presently pending before the Court is Zimbler's motion for summary judgment.

### RELEVANT FACTS

The facts in this case have been gleaned from the parties' Local Rule 12(M) and 12(N) statements.[1] Zimbler has been the accountant for Bero since 1979, and also performed accounting services for Bero's two businesses, Kitchens By Bero, Inc., and Tad Bero Kitchens and Bath, Inc. (collectively, "the business"). By 1991, Zimbler was aware that the business had accumulated liabilities and liens against it for failing to pay state sales taxes and state and federal payroll taxes. Bero's corporations also owed Zimbler approximately $20,000. Dougherty claims that Zimbler also knew, or should have known, that the Internal Revenue Service had issued liens on Bero's corporate bank accounts and that Bero was attempting to run the finances of the business through other checking accounts; Zimbler was a payee on a check drawn on one of those "special accounts." Zimbler was aware that Bero had decided to sell the business before the close of fiscal year 1991.

In the fall of 1991, Dougherty entered negotiations to purchase the assets of the business. Dougherty avers that she met with Bero and Zimbler over dinner on November 7, 1991 to discuss buying the business, and met again in Bero's office the next day, where Zimbler gave her an income statement reflecting the business' income and expenses for the 12–month period ending March 31, 1991. Dougherty claims that Zimbler assisted in the negotiations, orally representing that the business had been around for 17 years, that it was very successful and stable, and that it had profit margins of 35% to 40%.

On December 16, 1991, Dougherty's accountant, Gilbert, traveled to Chicago at Dougherty's request to meet with Zimbler and review the financial records of the business. However, Zimbler neither met with Gilbert nor provided any information to him. Gilbert says he was told by Zimbler's employee that other financial reports had not been prepared yet or were not available. In fact, at least four reports existed that bore completion dates before December 16, including a report for the 12–month period ending

---

1. Local General Rule 12(M)(3) requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 12(N)(3)(a) requires the opposing party to file a concise response to the movant's statement "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and any other supporting materials relied upon."

The non-movant is also permitted to file a statement of additional facts requiring the denial of summary judgment, pursuant to Rule 12(N)(3)(b), to which the movant may respond. All properly supported material facts set forth in either party's statement will be deemed admitted unless controverted by a properly supported statement of the opposing party. *See* LOCAL GENERAL RULES 12(M), 12(N)(3)(b).

March 31, 1990 that showed a negative net worth of $137,000 for one of Bero's corporations. Zimbler claims that he has no knowledge of what Gilbert was told.

Gilbert advised Dougherty that if the numbers she had been given originally were accurate, she would have a reasonable chance to make a profit if she were able to keep costs at the level he estimated and she made sales of $850,000. Dougherty then arranged to purchase the business from Bero in early 1992. Zimbler denies that he met with Dougherty on any occasion before the closing or provided her with any information.

Dougherty operated the business through August of 1993. As part of the purchase of the business, Dougherty gave two promissory notes to corporate entities controlled by Bero. In August of 1993, Bero sued Dougherty for debts that Dougherty allegedly owed under the promissory notes. Dougherty counterclaimed that she was defrauded and sought, *inter alia,* rescission of the notes. The court found that Dougherty had been defrauded by Bero when she bought the business and granted her request for rescission.

On December 16, 1993, while Dougherty's fraud counterclaim against Bero was pending, Bero filed for bankruptcy and obtained an automatic stay of Dougherty's claim. Dougherty filed an adversary complaint against Bero in bankruptcy court. That court also concluded that Dougherty was defrauded, and found that Bero's liability for his fraudulent misrepresentations was nondischargeable under the Bankruptcy Act.

Dougherty then brought this action for fraud and negligent misrepresentation against Zimbler, claiming that he orally misrepresented the profitability of the business, provided her with selective financial reports that did not disclose the true financial health of the business, and failed to inform her of the various negative facts he knew. Zimbler has moved for summary judgment, arguing that Dougherty cannot meet her burden to prove fraud by clear and convincing evidence, and that the claim for negligent misrepresentation fails to meet the requirements of § 30.1 of the Illinois Public Accounting Act, 225 ILCS 450/30.1. For the following rea-

sons, Zimbler's motion is denied in part, and granted in part.

### *LEGAL STANDARDS*

■ Summary judgment is proper only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue for trial exists only when the evidence could allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip Side Prods., Inc. v. Jam Prods., Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). In determining whether a genuine issue exists, the court "must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. In making its determination, the court's sole function is to determine whether sufficient evidence exists to support a verdict in the nonmovant's favor. *Id.* at 255, 106 S.Ct. at 2513. Credibility determinations, weighing evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. *Id.*

### *ANALYSIS*

*A. Count I: Fraud*

Dougherty claims that Zimbler knowingly participated in a fraud by making false statements of fact to her, and by omitting material facts in his representations to her. She contends that Zimbler's statements and omissions were made for the sole purpose of

convincing Dougherty to purchase the business, thereby relieving Bero of substantial debt and enabling Bero to pay Zimbler the $20,000 that he owed to Zimbler. Dougherty claims that she justifiably relied upon Zimbler's representations, and that she was damaged as a result. She alleges that, if Zimbler had provided Dougherty with a true financial picture of the business, Dougherty would have been able to determine that she could not operate the business at a profit, and would not have made the purchase.

 Under Illinois law,[2] the elements of common law fraud are: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance of the truth of the statements, and (5) damage to the other party resulting from such reliance." *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs.*, 12 F.3d 1406, 1412 (7th Cir.1993) (quoting *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 (7th Cir.1990) (citation omitted)). "Fraud may also consist of the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak." *Warner v. Lucas*, 185 Ill.App.3d 351, 354, 133 Ill.Dec. 494, 495, 541 N.E.2d 705, 706 (5th Dist.1989).

Zimbler asserts that he is entitled to summary judgment because Dougherty fails to establish elements of her fraud claim with respect to which she has the burden at trial. Specifically, he contends that the statements that he allegedly made to Dougherty were opinions, not statements of facts. He also argues that, under an Illinois statute, he owed no duty to disclose information to Dougherty. Further, he contends that Dougherty did not rely upon his representations in making her decision to purchase the business, and that even if she did, her reliance was not justified under the circumstances.

 Zimbler first argues that under Illinois law, representations of future income are opinions rather than statements of fact,

citing *Consolidated Bearings Co. v. Ehret–Krohn Corp.*, 913 F.2d 1224 (7th Cir.1990) and *Mother Earth, Ltd. v. Strawberry Camel, Ltd.*, 72 Ill.App.3d 37, 28 Ill.Dec. 226, 390 N.E.2d 393 (1st Dist.1979). Therefore, he asks this Court to conclude that his alleged misrepresentations were unactionable statements of opinion. However, the courts in *Consolidated Bearings* and *Mother Earth* agreed that "Illinois law is well settled, holding consistently that although representations of future income are not actionable, representations as to past income of a business constitute statements of fact." *Consolidated Bearings*, 913 F.2d at 1228 (quoting *Mother Earth*, 72 Ill.App.3d at 48, 28 Ill.Dec. at 236, 390 N.E.2d at 403.) Dougherty has proffered evidence that Zimbler misrepresented that the business was successful, stable, and had profit margins of 35% to 40%, and that he provided misleading financial reports that suggested that the business was then in good financial health. These are statements of past income rather than projections for future earnings. Thus, Zimbler's argument that his statements are not actionable must fail.

 Zimbler also contends that he owed no duty to inform Dougherty of any material facts, arguing that the Illinois Public Accounting Act, 225 ILCS 450/30.1 (1995), eliminates any duty running from an accountant to a third party. The Act does not apply to Dougherty's fraud claim, however, as § 30.1(1) of the Act expressly excludes from its scope acts and omissions "that constitute fraud or intentional misrepresentations." 225 ILCS 450/30.1(1). Thus, if Dougherty can make out an otherwise valid claim for fraud against Zimbler, the Act will not shield Zimbler from liability on Count I.

Zimbler lastly argues that Dougherty did not rely upon his alleged statements and omissions, and that if she did, reliance by her was not reasonable under the circumstances. He claims that Dougherty had every opportunity to investigate the transaction, and that she and her accountant did in fact investigate it. Thus, he asserts, Dougherty received

---

**2.** As jurisdiction in this case is founded on diversity, we apply state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938). The parties agree that Illinois law applies.

information from her own sources and consequently is chargeable with knowledge about the business' flaws. As such, she cannot have reasonably relied upon Zimbler's alleged representations about the business.

In order to avoid summary judgment, Dougherty "must set forth enough facts from which a jury could find by clear and convincing evidence" that she justifiably relied upon Zimbler's "alleged misrepresentation[s]." *Teamsters Local 282 Pension Trust Fund v. Angelos,* 839 F.2d 366, 370 (7th Cir.1988). In Illinois, when determining whether a plaintiff's reliance was reasonable, "all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account; if ample opportunity existed to discover the truth, then reliance is not justified." *Central States Joint Bd. v. Continental Assurance Co.,* 117 Ill.App.3d 600, 607, 73 Ill.Dec. 107, 112, 453 N.E.2d 932, 937 (1st Dist.1983). "Where it appears that a person ... has actually investigated and received information from his own sources rebutting the misrepresentation[,] he is not in a position to claim he was deceived." *Dixie–Portland Flour Mills, Inc. v. Nation Enterprises, Inc.,* 613 F.Supp. 985, 990 (N.D.Ill.1985) (quoting *Peterson Indus., Inc. v. Lake View Trust & Sav. Bank,* 584 F.2d 166, 168 (7th Cir.1978)). "A person charging fraud 'may not close his eyes to obvious facts.'" *Peterson Indus.,* 584 F.2d at 168 (quoting *Costello v. Liberty Mut. Ins. Co.,* 38 Ill.App.3d 503, 507, 348 N.E.2d 254, 257 (1st Dist.1976)).

On the other hand, "reasonableness is measured differently in fraud cases than in other contexts; 'the victim of a deliberate fraud ... need only avoid deliberate or reckless risk-taking.'" *Consolidated Bearings,* 913 F.2d at 1229 (quoting *AMPAT/Midwest, Inc. v. Illinois Tool Works,* 896 F.2d 1035, 1041–42 (7th Cir.1990)). "[O]rdinary prudence" does not require a buyer "to assume that [the] seller is a liar" or "to dig beneath

apparently adequate assurances." *Id.* at 1229–30.

Here, Dougherty was entitled to assume that the statements of past profitability she received were accurate, and to rely on them. Although it is undisputed that Dougherty did attempt to investigate the business further, Zimbler admits that he did not provide any information to Gilbert or Dougherty. Nor is there any evidence that Gilbert or Dougherty had access to other sources of information about the business that would have contradicted the assurances Dougherty had received. In these circumstances the Court cannot agree with Zimbler's suggestion that Dougherty indisputably "bur[ied] her head into the sand" with regard to her own investigation, especially drawing all the necessary inferences in Dougherty's favor. Thus, the motion for summary judgment on Count I is denied.[3]

### B. Count II: Negligent Misrepresentation

Zimbler contends that he is entitled to summary judgment for Dougherty's negligent misrepresentation claim because Dougherty does not allege facts necessary to overcome the restrictions on accountants' liability set forth in § 30.1 of the Illinois Public Accounting Act, 225 ILCS 450/30.1 (West 1995). He argues that the statute shields an accountant from negligence or malpractice actions except where the plaintiff either (a) alleges privity of contract, or (b) alleges that the accountant expressly stated in a writing, an intent for the plaintiff to rely upon the accountant's professional services. Zimbler maintains that Dougherty's negligent misrepresentation claim must fail as a matter of law because she admits that she did not have a contract with Zimbler, and Zimbler did not, in writing, authorize her to rely upon his services.

Section 30.1 of the Illinois Public Accounting Act delineates a narrow scope for accountants' liability to third parties. *See Robin v.*

---

3. In opposing summary judgment, Dougherty argues that Zimbler acted as Bero's agent, and thus should be bound by the courts' conclusions of fraud in Dougherty's litigation against Bero, through the operation of collateral estoppel. However, Dougherty has not advanced this theory in a format which would allow Zimbler and this Court to adequately address it—*i.e.,* a dispositive motion. Hence, her argument is not properly before the Court at this time and we express no opinion as to its merits.

*Falbo,* No. 91 C 2894, 1992 WL 188429 at *8–9 (N.D.Ill. July 24, 1992); *Endo v. Albertine,* 812 F.Supp. 1479, 1495 (N.D.Ill.1993); *President Lincoln Hotel Venture v. Bank One, Springfield,* 271 Ill.App.3d 1048, 1055, 208 Ill.Dec. 376, 382, 649 N.E.2d 432, 438 (1st Dist.1994). It provides that, with only two exceptions, "[n]o person, partnership or corporation licensed or authorized to practice [public accountancy] under this Act . . . shall be liable to persons not in privity of contract . . . for civil damages resulting from acts, omissions, decisions or other conduct in connection with professional services performed. . . ." 225 ILCS 450/30.1. The first exception to the privity requirement permits liability for "such acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations." 225 ILCS 450/30.1(1). As noted above, this exception applies to Dougherty's fraud claim.

Subsection 2 provides the second exception, which governs actions for negligent misrepresentation. That subsection allows liability if the accountant "was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action," but only if the accountant "(i) identifies in writing to the client those persons who are intended to rely on the services, and (ii) sends a copy of such writing or similar statement to those persons identified in the writing or statement." 225 ILCS 450/30.1(2). The first clause of subsection 2 permits third party liability actions where the plaintiff alleges that the accountant knew that the client intended for the plaintiff to rely upon the accountant's services. However, the latter part of subsection 2 qualifies the first clause with the requirements for written identification and notification.

*Robin v. Falbo,* No. 91 C 2894, 1992 WL 188429 (N.D.Ill. July 24, 1992), was the first

case to consider the writing requirement provisions of subsection 2. In *Robin,* the plaintiffs alleged that the defendants induced them to invest in a limited partnership by making false and misleading statements and omissions of material facts. *Robin,* 1992 WL 188429 at *1. One of the defendants was an accounting firm for the limited partnership. The plaintiffs alleged that the accounting firm owed them a duty because the firm was aware that they were likely investors. *Id.* at *6–8.

The plaintiffs in *Robin* asserted that, under Illinois common law, accountants could be held liable for representations made to a particular class of third party plaintiffs, where the purpose and intent of an accountant-client relationship was to benefit or influence those plaintiffs. *Id.* at *7 (citing *Brumley v. Touche, Ross & Co.,* 139 Ill. App.3d 831, 93 Ill.Dec. 816, 487 N.E.2d 641 (2d Dist.1985)). The court acknowledged the argument, but observed that the Illinois case law supporting the plaintiffs' position predated the enactment of § 30.1 of the Illinois Public Accounting Act, which directly addressed the scope of an accountant's liability to non-privity parties and in that respect superseded *Brumley.* *Id.* at *8. The court went on to hold that subsection 2 shields an accountant against liability for negligent misrepresentation to a third person except where the accountant has identified and notified that person, in writing, that the client intends for the person to rely upon the accountant's services. *Id.* at *9.

The court recognized that its interpretation of § 30.1 "causes an odd result, in that it gives the accountant, and not the client, the right to determine to which non-privity parties he will be liable." *Id.* at *9. However, the court held that this was the only proper interpretation of the statutory language, given the legislative history of the statute.[4] *Id.*

---

4. The court in *Robin* recognized that the language requiring written notification is susceptible to two interpretations. 1992 WL 188429 at *9. First, the language may be read as making liability to a third person "conditioned upon" the accountant "taking the affirmative steps" of written identification and notification. Without such a writing from the accountant, the accountant is not liable. *Id.* Second, the language can also be

read as merely providing accountants with an "exemption" from otherwise valid liability claims, where the accountant prepares a writing which identifies that only specific persons are intended to rely upon the accountant's services, and the accountant sends a copy of that writing to those persons. *Id.* Under this second interpretation, the plaintiff's claim for negligent representation would not be dismissed for a failure

To date, no Illinois state court has published a decision interpreting the writing requirements of § 30.1(2), although another federal court has followed *Robin. See Endo v. Albertine*, 812 F.Supp. 1479, 1495–96 (N.D.Ill.1993) (dismissing plaintiff's claim for failing to allege privity, intentional wrongdoing or written notification). *See also* Michael J. Polelle, *Accountant's Privity Shield: An Illinois Mistake?*, 38 DePaul L.Rev. 685 (1989) (discussing the legislative history and interpretation of § 30.1, which make it effectively impossible to sue an public accountant for negligent misrepresentation). This Court finds no basis for adopting a different interpretation.

Dougherty advances two arguments against applying § 30.1 here. First, Dougherty argues that § 30.1 does not apply to Zimbler's conduct because Zimbler's representations were made outside the ordinary scope of his professional accounting services. In her memorandum opposing Zimbler's motion, she contends that, by engaging in face-to-face negotiations, Zimbler "cross[ed] the line from accountant to sales assistant," and made his representations as Bero's "creditor, long-time friend and business broker." Second, Dougherty argues that § 30.1(2) should be narrowly interpreted to require a written authorization only with regard to an accountant's written work, and not with regard to face-to-face oral representations to third-parties.

 Dougherty's first argument is unconvincing. Section 30.1 applies to an accountant's "conduct in connection with professional services performed." Dougherty herself asserts that Zimbler represented to her that the information that he conveyed was "gained through his accounting services for Bero." She claims that Zimbler's activities as Bero's accountant made him aware that his representations about the business' liabilities, net worth, sales volumes, and profits were not accurate or complete. Moreover, Dougherty states that Zimbler's experience as Bero's accountant leant "an air of reliability to the representations he made about

Bero's business." This Court is unpersuaded that an accountant's conduct is not "in connection" with professional services performed solely because the accountant's information is meant to facilitate the sale of a client's business. Indeed, § 30.1(2) specifically recognizes, and applies where, "a primary intent of a client was for the professional services to . . . influence a particular [third party]."

Dougherty's second argument urges this Court to interpret the written identification and notification requirements of § 30.1(2) to apply only where a person relies upon an accountant's written work, and not where an accountant made face-to-face oral representations. She argues that "[t]he legislature did not intend to immunize accountants from . . . [oral] discussions with their client's potential buyers if they do not present a written letter providing that the statements he is about to make may be relied upon." However, Dougherty offers no basis or authority for such a limited statutory construction. Instead, the statute applies broadly to "acts, omissions, decisions or other conduct."

Dougherty notes that if a non-accountant such as a business broker had made the same alleged misrepresentations, that broker could be held liable. *See Richmond v. Blair*, 142 Ill.App.3d 251, 256, 94 Ill.Dec. 564, 568, 488 N.E.2d 563, 567 (1st Dist.1985) (recognizing a cause of action for negligent misrepresentation against a realtor); *Duhl v. Nash Realty*, 102 Ill.App.3d 483, 494, 57 Ill.Dec. 904, 913, 429 N.E.2d 1267, 1276 (1st Dist. 1981) (same; real estate broker). We recognize that the provisions of subsection 2 essentially shield accountants from any unwanted liability for negligent misrepresentation to third-parties, and agree that this protection may cause anomalous results on occasion. This is a matter for the Illinois legislature, however, not this Court. Under existing Illinois law, unless the plaintiff is in privity of contract with the accountant, the accountant will not be held liable in an action for negligence where the accountant has not taken the affirmative steps of written identification and notification to establish liability to the

to allege written identification and notification. The court in *Robin* found nothing in the legisla-

tive history to support the second interpretation.

plaintiff. Dougherty does not allege that she was in privity of contract with Zimbler or that she received notification of a writing authorizing her to rely upon Zimbler's work. Thus, Zimbler's motion for summary judgment on Count II of Dougherty's claim is granted.

### CONCLUSION

For all of the foregoing reasons, Zimbler's Motion for Summary Judgment is denied as to Count I and granted as to Count II. A Final Pretrial Order in this case shall be due on April 30, 1996, and this case will be placed on the Court's May trial calendar. A status hearing will be held in open court on April 22, 1996 at 9:00 a.m. for the sole purpose of setting a firm trial date.