In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-1599, 04-2353

RICHARD L. FOGEL,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*


GORDON & GLICKSON, P.C., *et al.,*

*Defendants-Appellees, Cross-Appellants.*

———————

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CV 1617—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED OCTOBER 25, 2004—DECIDED DECEMBER 29, 2004

———————


Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The cross-appeals in this diversity suit present issues of fraud (under the common law of Illinois) and arbitrability and a request by the defendants for sanctions for the filing of a frivolous suit, along with jurisdictional issues. The district court dismissed the suit for failure to state a claim, enjoined arbitration, but denied sanctions. The only sources of facts are the complaint and contracts appended to it.

Fogel is a former member of the Chicago law firm of Gordon & Glickson, a professional corporation until 1999 when it was converted for tax reasons to a limited liability company. At that point Fogel, an employee and shareholder of the PC, became an employee and member of the LLC. Despite the conversion, the PC was not dissolved. It had bought stock and stock options with money that would otherwise have been income to its shareholders, and it retained a portion of those assets after the conversion in order to provide deferred compensation to the shareholders.

Fogel continued to work for the law firm until September 1999, when he announced his resignation and hence, pursuant to contracts that he had signed at the time of the conversion, from the PC as well as the LLC. Pursuant to still another contract, governing the disposition of the assets retained by the PC, he became a creditor of the PC for his share of those assets, some $463,000, which was to be paid to him over a three-year period beginning in 2001. Oddly, given his charge of fraud, had he not—at the firm's suggestion—postponed his resignation to the beginning of the following year, he would have had a smaller entitlement because the PC's assets were revalued upward at the end of 1999.

The firm decided to sell some of the PC's assets and distribute the proceeds to the shareholders in the form of cash. Since Fogel was no longer a shareholder, he was not entitled to share in the proceeds of the sale. The firm, however, offered to treat him as if he were still a shareholder and thus to let him share in the proceeds of the sale—further paradoxical behavior for a defrauder. He declined, preferring to remain a general creditor. The sale took place and was profitable, and despite the distribution of the proceeds the PC's remaining assets had sufficient value to cover the debt to Fogel. But shortly afterwards, and before the payments to

him were due to begin, the dot-com bubble burst, the PC's remaining securities tanked, and the value of the PC's assets fell to a level at which it was able to pay Fogel only 60 percent of what it owed him, precipitating this lawsuit.

Fogel alleges that when the firm gave him a choice whether to be treated as a shareholder of the PC and thus participate in the sale of some of its assets, it failed to warn him that if he didn't go along but instead stood on his rights as a creditor there mightn't be enough assets left to pay him the full amount of the PC's debt to him. But it isn't fraud even for a fiduciary to fail to tell his principal something that is obvious. "A party cannot close its eyes to obvious facts and then charge that it has been deceived." *Modern Track Machinery, Inc. v. Bry-Lon, Ltd.*, 554 N.E.2d 1104, 1107-08 (Ill. App. 1990); see also *Costello v. Liberty Mutual Ins. Co.*, 348 N.E.2d 254, 257 (Ill. App. 1976); *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 645 (7th Cir. 2002) (Illinois law); *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1041-42 (7th Cir. 1990) (ditto). Fogel knew that he might not be paid in full if the PC's assets declined in value because of the vicissitudes of the stock market. He also knew that if assets were sold and the proceeds distributed to the PC's shareholders, of whom he was no longer one, the diminished pool of assets remaining would be even less likely to cover what the PC owed him.

A sale of a corporation's assets followed by the distribution of the proceeds to the owners *might* be a fraud against the corporation's creditors, such as Fogel (apparently the PC's only creditor). 740 ILCS 160/5(a), 6(a); *Cannon v. Whitman Corp.*, 569 N.E.2d 1114, 1116-17 (Ill. App. 1991); *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (Illinois law); *Pierce v. United States*, 255 U.S. 398, 403 (1921); William T. Vukowich, "Civil Remedies in Bankruptcy for Corporate Fraud," 6 *Am. Bankr. Inst. L. Rev.* 439, 444-47 (1998). Maybe

a concern with the possibility of being accused of such a fraud was what led the firm to offer Fogel a chance to participate in the sale of assets as if he were still a shareholder. By declining, he placed himself at risk that the assets might be dissipated to the point at which his claim as a creditor would be endangered. For not only did he know that some of them were about to be sold and the proceeds distributed to the shareholders; he also knew exactly which ones would be sold and what would be left in the PC.

He is left to argue only that the firm falsely assured him that there would be value enough remaining in the PC to pay his claim in full. But he could not have believed any such assurance. He knew what the remaining assets were; he knew they were stocks and stock options rather than Treasury bills; he knew the law firm did not control the stock market; and so he knew that the firm's representation to him concerning the future value of the PC's remaining assets was a prediction, rather than a promise on which a reasonable person could rely. *Lidecker v. Kendall College*, 550 N.E.2d 1121, 1125 (Ill. App. 1990); *Madison Associates v. Bass*, 511 N.E.2d 690, 699 (Ill. App. 1987); *Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311, 317 (Ill. App. 1985); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298-99 (7th Cir. 1993) (Illinois law). Often what sounds like a "promise" is actually "a hope or possibly a prediction rather than a commitment to do something within the 'promisor's' power to do ('I promise it will rain tomorrow'); and the 'promisee' would, if sensible, understand this. He would rely or not as he chose but he would know that he would have to bear the cost of any disappointment." *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 703-04 (7th Cir. 2004).

If Fogel wanted to minimize the risk to him of stock market fluctuations, he should either have accepted the of-

fer to be treated as a participant in the sale of assets, and thus received a portion of the proceeds (and therefore advance payment of a part of his entitlement), which were in cash, or have objected to the distribution of the proceeds, which reduced the assets available to pay the PC's debt to him. He did neither. He gave knowing consent to the chain of events that resulted in the PC's inability to honor its debt to him. So the claim of fraud was rightly dismissed, although we do not think the claim was so frivolous that the district judge can be said to have abused her discretion in declining to award sanctions.

After filing his suit in the district court, Fogel served a demand for arbitration on the LLC, contending that it had violated a contractual obligation to pay him, when he withdrew from the firm, both deferred compensation and the value of his equity interest in the firm. His contracts with the PC and the LLC contain an identical, broadly worded, "mandatory arbitration" clause, which provides that "any dispute, claim, question or disagreement . . . aris[ing] as a result of or in connection with this Agreement, or the breach thereof, . . . shall be resolved through arbitration." Although the clause was broad enough to encompass Fogel's fraud claim against the PC, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04 (1967); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 54 (7th Cir. 1995); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir. 1984), Fogel had disregarded it in suing in the district court; and the PC, content to litigate the fraud case there, had not invoked the arbitration clause either. When the firm learned of Fogel's demand for arbitration of his breach of contract claim against the LLC, it asked the district court to rule that Fogel was splitting his claim, that res judicata forbade him to do so, and therefore that he should be enjoined from arbitrating. The district court agreed and enjoined the arbitration. Fogel as part of his appeal asks us to vacate the injunction.

There is a jurisdictional hiccup. The district court dismissed the fraud suit while the motion to enjoin arbitration was pending. When Fogel filed his notice of appeal from that dismissal we ordered the appeal stayed pending disposition of the motion to enjoin, which would end the proceedings in the district court, thus enabling us to exercise jurisdiction under 28 U.S.C. § 1291 (appeal from final decision). When we received notice that the district court had amended its judgment to include the injunction, we set a briefing schedule for the appeal, but Fogel failed to file a new notice of appeal.

Had we dismissed the appeal, back when the notice of appeal was filed, for want of appellate jurisdiction, on the ground that there was then no final judgment in the district court and the appeal was therefore premature, *Katerinos v. United States Department of the Treasury*, 368 F.3d 733, 737-38 (7th Cir. 2004) (per curiam); *Florian v. Sequa Corp.*, 294 F.3d 828, 829 (7th Cir. 2002) (per curiam), Fogel would have known to file a new notice of appeal when the amended judgment was issued. Fed. R. App. P. 4(a)(4)(B)(ii); *Gripe v. City of Enid*, 312 F.3d 1184, 1186 (10th Cir. 2002). By instead merely staying the appeal, we *may* have led him to believe that his appeal was perfected and merely awaiting the completion of formalities in the district court. He should not have been fooled; it is settled law that the kind of stay issued in this case does not excuse the appellant from having to file a fresh notice of appeal if he wants to appeal from the district court's final decision. *Katerinos v. United States Department of the Treasury*, *supra*, 368 F.3d at 737-38; see also *Life Plus Int'l v. Brown*, 317 F.3d 799, 804-05 (8th Cir. 2003). And anyway when a rule is unambiguous a litigant is not permitted to rely on erroneous advice, even by a court. *Properties Unlimited, Inc. Realtors v. Cendant Mobility Services*, 384 F.3d 917, 921-22 (7th Cir. 2004); *Panhorst v. United States*, 241 F.3d 367, 373 (4th Cir. 2001); *Endicott Johnson Corp. v.*

*Liberty Mutual Ins. Co.*, 116 F.3d 53, 57-58 (2d Cir. 1997). (What is more, as we shall see, it would have been an error for us to dismiss the appeal for want of jurisdiction; there *was* a final judgment in the district court when we granted the stay, although we didn't know it.)

The cases we have just cited are ones interpreting the unhelpfully named "unique circumstances" doctrine, which is actually a form of equitable tolling that relieves against the consequences of an untimely filing of a notice of appeal if the appellant relied on a "specific assurance by a judicial officer." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989); *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 152 (2d Cir. 1999); *Moore v. South Carolina Labor Board*, 100 F.3d 162, 164 (D.C. Cir. 1996) (per curiam). Questionable on its face—the judge-made tolling rules, such as equitable tolling, are designed for statutes of limitations, not for jurisdictional deadlines, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *David v. Hall*, 318 F.3d 343, 345-46 (1st Cir. 2003); *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040-41 (D.C. Cir. 1986)—and rarely invoked successfully, the doctrine in operation is best illustrated by *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962) (per curiam). The district court had granted an extension of time within which to file the notice of appeal because the appellant's lawyer was out of the country. In reliance on the court's order, the appellant filed its notice of appeal within the extended deadline, but after the original 30-day deadline had expired. The court of appeals reversed the grant of the extension, which made the appeal untimely, but the Supreme Court reversed the court of appeals. The appellant had relied on the extension (for had it been denied, he could have filed the notice of appeal within the original deadline), and his reliance had been reasonable because the judge's granting of the motion for an extension of time hadn't been

an obvious abuse of discretion. On this basis the Supreme Court held that the appeal was timely after all. As the subsequent cases make clear, the reliance must indeed be reasonable, and it was not here.

The two cases on which Fogel places particular weight are not on point. In *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 463 (7th Cir. 1997), the original "judgment" was not a real judgment, but merely the announcement of the court's decision before entry of judgment, and so the notice of appeal from the first "judgment" was not premature. Fed. R. App. P. 4(a)(2). And in *Cardoza v. Commodity Futures Trading Commission*, 768 F.2d 1542, 1545-47 (7th Cir. 1985), the notice of appeal was timely. The defect in the notice was not jurisdictional and it was therefore forgivable. Fed. R. App. P. 3(a)(2).

A more interesting jurisdictional issue has to do with the fraud suit itself. A premature notice of appeal becomes effective on the denial of a pending motion only if the motion is one enumerated in Fed. R. App. P. 4(a)(4)(A), see Fed. R. App. P. 4(a)(4)(B)(i), such as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). The defendants did file a motion to amend the judgment to include an injunction against Fogel's seeking arbitration. But it was not a Rule 59(e) motion because it was filed more than 10 days after the judgment sought to be amended—that is, the judgment dismissing the fraud suit. So it did not extend Fogel's deadline for filing his notice of appeal from that judgment.

But Fogel's appeal from that judgment is saved by the following sentence in the district judge's minute order directing the entry of judgment: "All pending motions are terminated." One of those motions was the defendants' motion to bar arbitration. That motion was denied by the language we just quoted. A Rule 58 judgment was entered,

pursuant to the minute order. That was a final and appealable judgment because nothing remained pending in the district court (all motions having been terminated, remember), and the defendants' subsequently filed motion to amend the judgment was a nullity, as the district judge failed to realize in granting it. Cf. *Salton, Inc. v. Phillips Domestic Applances & Personal Care B.V.*, No. 04-1042, 2004 WL 2801691, at \*1 (7th Cir. Dec. 7, 2004).

The motion cited no rule that authorizes a district judge to revise a final judgment; cited, in fact, no rule at all. The logical rule to cite would have been Fed. R. Civ. P. 60(b), the deadline for filing a Rule 59(e) motion having passed. Instead of citing Rule 60(b) or any other rule or doctrine governing postjudgment motions, the defendants invoked *Nelson v. Adams, USA, Inc.*, 529 U.S. 460 (2000), for the proposition that a district court has the authority to revise a judgment to grant additional relief provided that the party against whom the judgment is entered has an opportunity to be heard on the matter. What *Nelson* actually holds is that Rule 15(a), governing the amending of complaints, cannot be used after final judgment has been entered to add another party to the judgment. The case does not suggest that a party can ignore the limitations that Rules 59(e) and 60(b) place on motions to amend final judgments. Even if the defendants' motion were construed as one under Fed. R. Civ. P. 60(b), it would not arrest the 30-day limit for filing a notice of appeal from a final judgment; and so Fogel was correct to file that notice within 30 days of the final judgment in the fraud suit, *Browder v. Director, Department of Corrections*, 434 U.S. 257, 263 n. 7 (1978); *Hall v. Life Ins. Co. of North America*, 317 F.3d 773, 775 (7th Cir. 2003); *American Federation of Grain Millers, Local 24 v. Cargill Inc.*, 15 F.3d 726, 728 (7th Cir. 1994); *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 56 (2d Cir. 1999) (per curiam); cf. *Simmons v. Ghent*, 970 F.2d

392, 393 (7th Cir. 1992); *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1362 (3d Cir. 1990), even though the defendants' motion to amend was pending. *Hatfield v. Board of County Commissioners*, 52 F.3d 858, 861-62 (10th Cir. 1995); *Marshall v. Shalala*, 5 F.3d 453, 454 (10th Cir. 1993). The notice of appeal was not premature. But to challenge the amended judgment, and thus the injunction, Fogel would have had to file a new notice of appeal, and he failed to do so. So the appeal from the injunction must be DISMISSED for want of appellate jurisdiction, and so we do not address the issue of res judicata. The dismissal of the fraud suit and the denial of sanctions are AFFIRMED.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*