In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 22-2267 & 22-2188

RANDALL EWING and YASMANY GOMEZ,

*Plaintiffs-Appellees, Cross-Appellants,*

*v.*

1645 W. FARRAGUT LLC,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-9930 — **Sharon Johnson Coleman**, *Judge.*

ARGUED SEPTEMBER 8, 2023 — DECIDED JANUARY 8, 2024

Before SYKES, *Chief Judge*, and ROVNER and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Randall Ewing and Yasmany Gomez contracted with 1645 W. Farragut LLC (Farragut) to purchase a house. At the time, the house was gutted and needed substantial work. Nonetheless, Ewing and Gomez moved forward with the contract based on Farragut's representation that the house would be renovated and ready by closing. They gave Farragut $117,500 in earnest money, but unbeknownst

to Ewing and Gomez, the house was under a stop work order. That order hindered their ability to obtain a mortgage by closing, and they requested to have their earnest money returned. Farragut refused.

Ewing and Gomez sued Farragut for breach of contract, common law fraud, and fraud under the Illinois Consumer Fraud Act. The district court found Farragut liable for fraud and breach of contract on summary judgment, and a jury awarded Ewing and Gomez $905,000 in damages after trial. Farragut then moved for judgment as a matter of law, arguing that it did not cause most of the damages, and moved for a new trial based on various evidentiary and jury instruction issues. The district court denied both motions, and Farragut appealed. On cross appeal, Ewing and Gomez seek to reverse the denial of their motions to amend the complaint to add Erik Carrier (Farragut's principal) to the case. Because the record supports the damages awarded in this case, and because the district court did not abuse its discretion in denying the motion for a new trial and the motions to amend, we affirm.

I

1645 W. Farragut LLC is a limited liability company owned and controlled by Erik Carrier. In January 2016, Farragut purchased a gutted house in Chicago, located at 1645 West Farragut Avenue. Farragut planned to renovate the house and make improvements to its floorplan. In February 2016, a City of Chicago inspector discovered that Farragut had impermissibly performed structural work on the house without a permit. As a result, Farragut had to pause all construction on the house. A proper permit was not obtained until August 26, 2016, and a stop work order remained in effect until November 23, 2016.

Meanwhile, in March 2016, Appellees, Randall Ewing and his husband, Yasmany Gomez, wished to relocate from Florida and wanted to buy a home in Chicago. They first viewed a house located at 1651 West Farragut Avenue but then turned their attention next door to the gutted 1645 West Farragut property because of its customizability. Appellees expressed interest in the property, and Farragut, through Carrier, stated that the renovation would be completed in six months even though Carrier already knew construction had been paused. Carrier even assured Appellees' realtor that Farragut had all the proper permits in place and that the house complied with building codes.

On April 17, 2016, Appellees and Farragut executed a contract for the purchase of the house. The contract stated that closing would occur on or around October 3, 2016, and that Farragut had not received any notice of zoning or building violations that had not been corrected. On May 2, 2016, the parties executed a modification to the purchase agreement, which still contained Farragut's misrepresentations. Under the modification, Appellees tendered $117,500 (ten percent of the purchase price of the house) to be held in escrow by Farragut's realtor as earnest money.

Under the contract's mortgage contingency clause, Appellees had until August 15, 2016, to either obtain a mortgage commitment for the house or inform Farragut that they failed to do so; Farragut then could obtain a mortgage commitment on Appellees' behalf. Appellees failed to obtain a mortgage commitment by the requisite date, and they informed Farragut. Farragut similarly failed to obtain a mortgage for both Appellees, though one lender indicated a mortgage could be obtained in Ewing's name only; Appellees declined. On

October 16, 2016, Appellees' counsel sent a letter to Farragut's counsel declaring the agreement null and void. In response, Farragut terminated the contract and retained the $117,500 in earnest money as liquidated damages because, according to Farragut, Appellees had breached the contract by failing to obtain a mortgage.

As a result, on October 21, 2016, Appellees filed this suit seeking damages for breach of contract, common law fraud, and fraud under the Illinois Consumer Fraud Act. Following the close of discovery, Appellees moved to amend their complaint to add Carrier as a defendant. That motion was denied. At summary judgment, the district court found Farragut liable for fraud as a matter of law. Only the breach of contract liability (both by Farragut and by Appellees) and damages issues remained for trial, though Farragut's fraud liability rendered the breach of contract claim irrelevant for damages purposes. The jury awarded Appellees $905,000 in fraud damages based on the retained earnest money, additional economic damages, and emotional damages. After judgment was entered, Appellees again moved to amend their complaint to add Carrier as a defendant. The district court denied that motion too.

Farragut then moved for judgment as a matter of law, asserting that Farragut's fraud did not cause any additional damage to Appellees aside from the loss of earnest money. Farragut also moved for a new trial, pointing to various evidentiary issues and claiming error in several jury instructions. The district court denied both motions.

Farragut now appeals the denial of its post-trial motions. Pertinent to those motions, the parties agree that Illinois law applies to Appellees' underlying claims. On cross-appeal,

Appellees seek review of the district court's denial of both motions to amend the complaint to add Carrier as a defendant.

## II

Farragut does not contest its liability for fraud and breach of contract, nor does it contest the $117,500 in damages based on the retained earnest money. Instead, Farragut's grievances stem from the $787,500 in additional damages that were awarded because Appellees did not acquire the house. In its motion for judgment as a matter of law, Farragut argued, as it does here, that its fraud did not cause Appellees to lose the house and therefore did not cause additional damages apart from the retained earnest money. Alternatively, Farragut urges us to remand for a new trial because of several evidentiary and jury instruction issues that purportedly led to an excessive damages award. These arguments are not persuasive. We first address the motion for judgment as a matter of law before turning to the motion for a new trial.

## A

We review denial of a Federal Rule of Civil Procedure 50(b) motion for judgment as a matter of law de novo, construing the trial evidence "strictly in favor of the party who prevailed before the jury," and determining whether a reasonable jury would have "a legally sufficient evidentiary basis to find for the party on that issue." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016) (quotations omitted). "The court does not make credibility determinations or weigh the evidence." *Passananti v. Cook County*, 689 F.3d 655, 659 (7th Cir. 2012). Further, while we review the entire record, we ignore all evidence favorable to

the moving party if the jury was not required to believe it. *Id.* (citation omitted).

Farragut frames much of its appeal around loss causation, but that theory is misplaced. "[L]oss causation is the causal connection between the material misrepresentation and the economic loss suffered by investors." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 808 (2011) (cleaned up). Farragut's argument does not fit within this framework. The facts here do not involve an investment in property made due to fraud where the property's value ultimately declined, leading to "loss" damages. Rather, the crux of Farragut's argument is a traditional "but-for" dispute: that Farragut's fraud did not cause Appellees to lose the house. Farragut advances its argument by attributing the loss of the house to Appellees' conduct rather than its own. For example, Farragut stresses that Appellees could have obtained a mortgage in Ewing's name alone. That may be true, but that does not mean Farragut's fraud did not also cause the sale's failure. Appellees had the right to only consent to a mortgage in both of their names, and there are many sensible financial reasons a married couple would do so. Moreover, the mortgage contingency clause in the agreement required the "Buyer" to obtain a mortgage, and throughout the agreement, the "Buyer" was listed as *both* Ewing and Gomez.

Although Farragut attempts to shift the blame for the failure of the deal to Appellees' decision to declare the contract null and void, Appellees only took that step because they could not secure a mortgage commitment. The proper question, then, is whether a reasonable jury could find that Farragut's fraud caused Appellees to fail to secure that mortgage

commitment. Based on the evidence in the record, the answer is unequivocally yes.

First, based on meetings with several mortgage brokers, Ewing testified that he and Gomez had difficulty obtaining a mortgage commitment by the required contract date because the "home wasn't ready to be lived in" and because they "couldn't get a mortgage until the home was ready." Next, a mortgage broker, Matthew Hoppe, testified that, for the type of mortgage Appellees needed, a mortgage commitment could not be provided while the house was still gutted. Relatedly, the jury heard testimony that Farragut's refusal to return the $117,500 in earnest money, which it kept for five years, prevented Appellees from having the liquid assets to go out and purchase another home.

In sum, while Appellees believed, based on Farragut's fraudulent misrepresentations in March 2016, that construction was ongoing and the house would be completed by the October closing date, the house in fact remained gutted with a stop work order in effect until November; a proper mortgage commitment could not be secured on a gutted house; and Appellees therefore terminated the contract. A reasonable jury could find that Farragut's fraud caused Appellees to not acquire the house, resulting in the additional damages awarded. The district court properly rejected Farragut's motion for judgment as a matter of law.

B

Next, Farragut seeks a new trial based on purportedly erroneous jury instructions, excessive damages, and other miscellaneous evidentiary issues. The standard of review for a denial of a motion for a new trial is abuse of discretion.

*Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). Under an abuse of discretion standard, this court "shall not second-guess the decision of a trial judge that is in conformity with established legal principles and, in terms of its application of those principles to the facts of the case, is within the range of options from which one would expect a reasonable trial judge to select." *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 754 (7th Cir. 2002) (quoting *Am. Nat'l Bank & Trust v. Reg'l Transp. Auth.*, 125 F.3d 420, 431 (7th Cir. 1997)). "We reverse only if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (cleaned up).

1

Farragut's first bucket of arguments contests three jury instructions: (1) the damages instruction; (2) the liquidated damages instruction; and (3) Instruction 1.04, which provided the jury with the district court's summary judgment findings. After summarizing the applicable law, we address each in turn.

"In a diversity case, federal law guides our review of jury instructions." *Stutzman v. CRST, Inc.*, 997 F.2d 291, 293 (7th Cir. 1993). "In order to obtain a new trial based on an incorrect jury instruction, an appellant must establish both that the instructions failed to properly state the law and that he was prejudiced by the error because the jury was likely to be misled or confused." *Davis v. Wessel*, 792 F.3d 793, 798 (7th Cir. 2015) (cleaned up). Whether an instruction stated incorrect law is reviewed de novo, *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020), but that review is not automatic.

Any party wishing to contest a jury instruction must distinctly state at trial "the matter objected to *and the grounds for the objection*." Fed. R. Civ. P. 51(c)(1) (emphasis added). "The objection must be specific enough that the nature of the error is brought into focus. … There are no formal requirements, but pragmatically speaking the district court must be made aware of the error prior to instructing the jury, so that the judge can fix the problem before the case goes to the jury." *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729–30 (7th Cir. 2002) (citations omitted). "Consistency is required as well; to preserve the objection, the party must state the same grounds when objecting to the jury instruction as it does in its motion for a new trial or on appeal." *Id.* at 730.

Failure to preserve a jury instruction objection does not necessarily end the analysis. "If a party fail[s] to object properly to an instruction, an appellate court 'may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights.'" *Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017) (quoting Fed. R. Civ. P. 51(d)(2)). "Especially in civil cases, plain-error review of jury instructions is quite limited and discretionary, and reserved for exceptional circumstances." *Id.* (cleaned up). "Application of Rule 51(d)(2) requires that (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

There is a difference, however, between merely forfeiting an objection and waiving an objection. See *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) (distinguishing waiver and forfeiture). While forfeiting an objection still allows for

plain error review under Rule 51, a party is not entitled to any review if it waived an objection to the instruction, for instance, by inviting the purported error. See *United States v. Muskovsky*, 863 F.2d 1319, 1329 (7th Cir. 1988) ("Initially, we note that if the district court's instruction was error, it was error that was invited by the Defendants. … Where error is invited, not even plain error permits reversal."); see also 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2558 (3d ed. 1998) ("[A] party who requests a jury instruction cannot complain if the instruction, or one substantially like it, is given by the trial judge.").

i

Farragut's most substantive jury instruction argument pertains to the damages instruction. The damages instruction asked the jury to consider the following factors when determining damages resulting from Farragut's fraud:

1. Increased cost to purchase a home;
2. Costs to rent a comparable property in Chicago following termination of the contract to compensate them for the loss of use of the property up until the present. …
3. Costs incidental to performing the contract, such as required trips to and from Florida to Chicago to make required contract decisions;
4. Emotional distress;
5. Actual costs Randall Ewing and Yasmany Gomez incurred to rent in Chicago, IL following the breach. …

Farragut objects to every factor as inconsistent with the law. We address the factors piecemeal.

First, we reject Farragut's objections to factors 3 (costs incidental to performing the contract) and 4 (emotional damages) on the merits. Incidental out-of-pocket losses resulting from fraud are recoverable under Illinois law, *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 274 (7th Cir. 1996) (applying Illinois law), and Ewing testified that he and Gomez spent approximately $2,000 to perform the contract. Emotional damages are also recoverable in Illinois for intentional torts. See *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 467 (Ill. App. Ct. 2004). On appeal, Farragut does not dispute that emotional damages are recoverable but insists that the instruction failed to instruct the jury on the severity needed for emotional damages to be awarded. Of course, additional detail in the instruction could have been helpful, but the omission did not create a misstatement of the law. And Farragut itself requested that emotional distress by itself be the only words that the jury sees. Accordingly, factors 3 and 4 of the damages instruction were proper.

Farragut waived any objection to factors 1 (increased cost to purchase a home) and 5 (actual rental cost) by including them in its own proposed instructions and inviting the purported error. Farragut does not dispute that it included factors 1 and 5 in its own proposed instructions but urges this court to review for plain error under Rule 51(d)(2). As discussed above, we will not review for plain error when the objecting party waives its objection and invites the error.

Finally, as to factor 2 (cost to rent a comparable property), while Farragut did not waive its objection, it failed to properly preserve it, resulting in forfeiture. Namely, on appeal,

Farragut objects to factor 2 because it argues loss of use damages are not recoverable under Illinois law when a plaintiff does not actually own the property in question. However, Farragut never objected to factor 2 on this ground at trial or in its motion for a new trial. Because preservation under Rule 51 requires consistency as to the grounds for the objection, *Schobert*, 304 F.3d at 730, Farragut failed to preserve its objection to factor 2.

Because Farragut only forfeited its objection, we may still review the instruction as to factor 2 for plain error. Here, Farragut fails to meet that exceedingly high threshold. Quite simply, any error here was not plain. The Supreme Court has stated, "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). Farragut did not identify, nor could this court find, an Illinois case directly on point to Farragut's objection that would render any purported error in factor 2 obvious. Nor does this instruction present an exceptional circumstance that would justify plain error reversal in a civil case. See *Walker*, 867 F.3d at 803. Farragut makes no developed argument to the contrary.

Farragut had ample time and opportunity to raise its present concerns with the damages instruction. Factors 3 and 4 stated the correct law. Farragut invited any purported error as to factors 1 and 5. And as to factor 2, even if the district court erred, that error was not plain.

ii

Farragut next complains that it was prejudiced by the liquidated damages instruction. For context, the contract between Farragut and Appellees contained a liquidated damages provision that stated, "If Purchaser materially defaults

on any of the terms and conditions contained in this Purchase and Sale Agreement, then all payments made by Purchaser shall be retained by Seller as liquidated damages, and not as a penalty, and this Agreement shall thereupon become null and void." Before trial, in a motion in limine, Farragut had asked the district court to permit evidence of the liquidated damages provision to rebut allegations of bad faith. The district court denied that motion.

Nonetheless, during trial, Farragut questioned Ewing about the provision. Appellees objected on the ground that the cross-examination flouted the ruling on the motion in limine, and a long colloquy ensued. During that exchange, Farragut's counsel stated, "When we [discussed the motion in limine], we finally agreed to resolve it by a limiting instruction. … [I]t was our understanding from your ruling that in the course of how it came up, it was in the contract. As long as we said you made the decision already that it was no longer enforceable and that the jury certainly couldn't take into account that somehow 1645 West Farragut could keep the money because the liquidated damages provision was not in effect … ."

Farragut's counsel thus seemingly agreed to resolve the dispute by having the district court instruct the jury that (1) the liquidated damages provision was found unenforceable and (2) the provision did not excuse Farragut's retention of the earnest money. The district court did just that: "So, once again, I've determined that the clause was not an enforceable penalty, even though it was there in the contract, but you cannot consider whether that clause excused any of [Farragut's] actions towards the [Appellees]." After the district court read the limiting instruction and asked the parties if "that

complete[s] it," Farragut's counsel responded affirmatively, thus waiving any objection at this stage. Farragut's assertion that its motion in limine preserved its objection is mistaken; that motion did not contemplate the limiting instruction at issue, which was the proposed solution to the underlying dispute.

Regardless, Farragut makes no compelling argument as to prejudice. It does not appeal the district court's unenforceability ruling, and the limiting instruction simply summarized that ruling. The instruction did not, as Farragut suggests, instruct the jury that Farragut intended from the outset to punish Appellees. Rather, the instruction merely stated that, when drafted, the clause would punish Appellees for not completing the contract. That statement is objectively true, and the district court did not abuse its discretion in reading it to the jury.

iii

In one final effort to contest the jury instructions, Farragut argues that the timing of Instruction 1.04 prejudiced its case. Instruction 1.04 provided the jury with the district court's summary judgment findings. Farragut does not object to the substance of the instruction and only argues that the timing of the instruction (just before Ewing testified) bolstered Ewing's testimony and otherwise misled the jury.

"District judges have wide discretion to manage their proceedings … ." *Rainey v. Taylor*, 941 F.3d 243, 247 (7th Cir. 2019). Of course, there will be instances where the timing of an instruction prejudices a party. This is not such a case. The instruction simply listed undisputed facts. And any prejudice is completely speculative. See *Lange v. City of Oconto*, 28 F.4th

825, 841 (7th Cir. 2022) ("Mere speculation that the jury might have decided the case differently if given the proper instruction is insufficient to establish prejudice.") (quotation omitted).

2

Farragut next makes two evidentiary arguments that it believes warrant a new trial. Both are meritless.

First, Farragut asserts that the district court abused its discretion by admitting a homophobic statement made by Carrier, where he referred to Appellees as "fruit cups." Farragut believes (1) the statement was irrelevant under Federal Rule of Evidence 401 and (2) even if relevant, its probative value was substantially outweighed by unfair prejudice requiring exclusion under Federal Rule of Evidence 403.

In this case, Appellees could pursue punitive damages on their claims, *Tully v. McLean*, 948 N.E.2d 714, 729 (Ill. App. Ct. 2011) (permitting punitive damages in torts if malice or willfulness can be shown), and the district court explicitly allowed them to do so, noting the "high probative value" of the "fruit cups" statement. Consequently, Appellees relied on the statement at trial to show that Farragut committed the fraud with homophobic malice toward them. That, alone, was enough for relevance. See *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) ("A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant.") (quoting *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)). The district court's ultimate granting of Farragut's motion for a directed verdict on punitive damages did not retroactively

render the "fruit cups" statement irrelevant; it only meant Appellees failed to present sufficient evidence to submit the issue to the jury.

Farragut's Rule 403 argument likewise fails. We give special deference to Rule 403 findings and will not substitute our opinion for that of the trial judge merely because we might have ruled differently. *Id.* Here, the evidence was particularly probative of Carrier's potential animosity toward Appellees. See *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008) ("[T]he more probative the evidence, the more the court will tolerate some risk of prejudice … .") (quoting *United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994)). And the district court did not abuse its discretion in finding that a single reference to Appellees as "fruit cups" was not prejudicial enough to sway the jury, particularly when the prejudice (homophobia) was itself central to the purpose of the evidence. See *United States v. Hanna*, 630 F.3d 505, 512 (7th Cir. 2010) (noting that we routinely reject Rule 403 challenges when the defendant is "being prosecuted for exactly what the evidence depicts") (cleaned up).

As for Appellees' references to the "fruit cups" statement in closing argument (after the district court had granted a directed verdict on punitive damages), Farragut failed to object to these at trial. True, a definitive ruling in a motion in limine typically preserves an objection for appeal, *Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999) (en banc), but here, the district court's motion in limine ruling was far from definitive, having been denied solely because the statement was probative of punitive damages. Once punitive damages were no longer at issue, Farragut should have objected to Appellees' further references to the statement. Moreover, Appellees proposed a

limiting instruction on the issue, but Farragut rejected it, no longer believing it necessary. See *Common v. City of Chicago*, 661 F.3d 940, 946 (7th Cir. 2011) ("A party who declines the opportunity to have a limiting instruction, waives the right to claim that he has been prejudiced by evidence that is otherwise relevant and admissible."). In any event, Farragut fails to show how it was prejudiced by Appellees' references to the "fruit cup" statement in closing argument when the jury had already heard that statement earlier in the trial when it was relevant. The district court did not abuse its discretion in denying a new trial on this basis.

Farragut also seeks a new trial based on a violation of the "golden rule." Appellees stated in closing argument, "And I'm sure that every one of you, if you were in the process of buying your dream home, would want to know if all physical work on the premises had ground to a halt … ." Of course, "[a]n appeal to the jury to imagine itself in the plaintiff's position is impermissible … ." *Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985). And Farragut timely objected. However, in its discretion, the district court rejected Farragut's curative instruction to avoid drawing any more attention to the trivial statement. The district court's reasoning was sound. The problematic statement was only a morsel of Appellees' closing argument, and Farragut fails to show any resulting prejudice.

3

Alternatively, Farragut seeks remittitur of the damages award. "[W]hen a federal jury awards compensatory damages in a state-law claim, state law determines whether that award is excessive." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019). "Under Illinois law it's neither necessary nor

appropriate to evaluate a jury's compensatory award against awards in similar cases; a comparative analysis is not part of the state framework." *Id.* Instead, "remittitur is appropriate 'only when a jury's award [1] falls outside the range of fair and reasonable compensation, [2] appears to be the result of passion or prejudice, or [3] is so large that it shocks the judicial conscience.'" *Id.* (quoting *Klingelhoets v. Charlton-Perrin*, 983 N.E.2d 1095, 1113 (Ill. Ct. App. 2013)). On the other hand, remittitur is not appropriate if the award is reasonably supported by the facts. *Id.* "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997).

First, the damages award falls within the range of fair and reasonable compensation. Farragut's fraud led to two crucial events: (1) it caused Appellees to fail to secure a mortgage and purchase the house; and (2) it induced Appellees to turn over a significant portion of their savings ($117,500), which was not returned for five years. The jury heard evidence supporting a damages award of $905,000 based on this fraud, including loss of use damages (based on a $6,000 monthly market rental value), the increased value of the home over five years, various travel expenses resulting from the fraud, emotional damages, and the $117,500 in earnest money lost.

Farragut specifically complains about the emotional damages award. Because the jury awarded damages as a lump sum, we cannot discern exactly how much of the award was allocated to emotional damages, though the parties estimate the sum was approximately $235,500. Regardless, Appellees presented enough evidence to support emotional damages.

Appellees' testimony described how this ordeal (1) impacted their marriage, (2) reduced their ability to purchase a dream home by tying up their finances for five years, and (3) exacerbated Gomez's anxiety disorder. This court will not reverse the district judge's decision under an abuse of discretion standard when the judge and jury sat in the best position to assess witness credibility. See *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 438 (1996) ("Trial judges have the unique opportunity to consider the evidence in the living courtroom context, while appellate judges see only the cold paper record.") (quotations omitted).

Next, Farragut fails to show that the damages award resulted from passion or prejudice. Farragut points predominantly to the homophobic "fruit cups" statement to support its argument. True, Appellees' counsel emphasized Carrier's homophobia as part of their litigation strategy. But that is not enough, particularly when the emphasis was pertinent to potential punitive damages. Farragut's concerns could have been addressed with limiting instructions at trial, but as we noted previously, Farragut rejected this proposed solution. More importantly, the jury heard more than enough evidence to award the damages that it did based on the record rather than any purported passion or prejudice.

Finally, the damages award does not shock the judicial conscience. Farragut protests Appellees' windfall: Appellees will recover damages amounting to almost the full value of the house they planned to purchase, despite only spending $117,500. But this is not solely a breach of contract case. This is a fraud case. The jury heard evidence that Farragut's fraud caused damage to Appellees in several ways, and the sum correspondingly calculated does not shock the conscience.

The district judge and the jury had front row seats to examine the parties' testimony and weigh the evidence. With that perspective in mind, we find that remittitur is unwarranted.

## III

Having resolved Farragut's appeal, we turn to Appellees' request to add Carrier to the case. Some context is useful here.

Discovery began in early 2017 and was scheduled to end on August 3, 2018. Developments during discovery led Appellees to seek leave to file an amended complaint. However, Appellees filed their motion on September 11, 2018, more than a month after discovery closed. The district court denied that motion.

Consequently, in June 2019, Appellees filed a separate lawsuit against Carrier and D'Aprile Properties, LLC (Carrier's real estate employer) that asserted the same claims as those sought to be added in the first motion to amend. *Ewing v. Carrier*, No. 19-cv-03791, 2021 WL 4244753 (N.D. Ill. Sept. 17, 2021). That case was dismissed on claim preclusion grounds by a different district judge. *Id.* at *3–4. Appellees appealed the dismissal, and we vacated the judgment, remanding the case to the district court with instructions to transfer the case to Judge Coleman. *Ewing v. Carrier*, 35 F.4th 592, 594 (7th Cir. 2022). Judge Coleman then stayed that case pending the resolution of this appeal.

Fearing Farragut's undercapitalization, Appellees filed a second motion to amend to add Carrier after final judgment was entered. The district court denied that motion as well.

A

Our precedent gives significant deference to district courts when they deny motions for leave to file amended pleadings. We review the district court's decision under the highly deferential abuse of discretion standard, reversing only if the district court refused to grant the leave "without any justifying reason." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (quoting *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

The dismissal of the first motion to amend can be quickly affirmed under this standard. The district court was not persuaded by Appellees' reasons for delay and further concluded that an amended complaint would cause undue prejudice in light of the court's scheduling order. The district court properly justified its ruling, explaining that the addition of new parties and new claims well after discovery had closed would result in a new, time-consuming, and expensive discovery process that would prejudice Farragut and the newly added parties.

Appellees filed their second motion after final judgment. "[I]t is 'well settled that after a final judgment, a plaintiff may amend a complaint under Rule 15(a) only with leave of court after a motion under Rule 59(e) or Rule 60(b) has been made *and the judgment has been set aside or vacated*.'" *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (emphasis in original) (quoting *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1992)). Appellees erroneously rely on *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000), for the proposition that parties can be added post-judgment so long as the party is served with a complaint and granted the opportunity to respond. A plaintiff made an identical argument in *Fogel v. Gordon & Glickson, P.C.*,

393 F.3d 727 (7th Cir. 2004). Rejecting that argument, we stated, "What *Nelson* actually h[eld] is that Rule 15(a), governing the amending of complaints, cannot be used after final judgment has been entered to add another party to the judgment. The case does not suggest that a party can ignore the limitations that Rules 59(e) and 60(b) place on motions to amend final judgments." *Id.* at 733. And under our precedent, "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008).

Aside from a single line stating they were bringing their motion to amend under Rule 59, Appellees did not otherwise support their request to set aside or amend the judgment. The district court reasonably denied the motion on that ground

AFFIRMED